Artis S. **WASHINGTON**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 14712.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 15, 1958.

Decided Feb. 19, 1959.

Mr. John H. Pickering, Washington, D. C. (appointed by this Court), for appellant.

Mr. Walter J. Bonner, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, WASHINGTON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

This is an appeal from a conviction of housebreaking (with intent to steal) and of assault. The assault victim, a thirteen year old girl, and her grandfather were sleeping in his ground floor living room where they had gone after the child had been frightened by some noise in her bedroom. The child testified that she suddenly awoke to find an intruder, whom she identified at a subsequent line-up and at trial as appellant, with his hand on the bottom of her blouse. She related that, when she screamed, the intruder put his hands on her neck, told her to shut up, and then shook her and hit her on the head with his hand as she continued to scream.

Awakened by these screams, the grandfather struck the intruder with a cane as he fled. The grandfather testified on cross-examination by defense counsel that entry had apparently been gained by forcing open a kitchen window and that the assault and entry had occurred between midnight and 1:00 a.m.

The police were called, and the girl identified the intruder to them as a man she had seen the previous day in front of her grandfather's house talking to a neighbor boy. According to the policeman, he promptly learned from this boy that the man's first name was Artis and that he was frequently seen at a nearby liquor store. Calling the liquor store proprietor, the police learned that a man named Artis was an occasional employee and found out his approximate address. The police reached this address, corrected slightly by neighbors, at about 1 a.m.,[1] or less than an hour after the intruder's attack and flight. The record shows an uninterrupted police search for the intruder during the interval.

Called as a defense witness, appellant's common-law wife testified that she was awakened in her second floor bedroom by a loud knocking on a downstairs window. She stated:

> "I got up and looked out the window and that is when I seen the officer, and I raised the window and ask who they was looking for and the officer say, 'May I come in and speak to you and your husband for a minute,' and I say, 'Yes,' and I run down * * * and opened the door and let them in."

Appellant's wife and her mother both testified at trial that he had been home all evening. Police, however, had found his shoes wet and covered with fresh yellow mud when they were admitted to his room. The wife said she had borrowed the shoes to go out into the back yard (which she described as muddy) during the night, but the prosecution showed that the only mud or dirt in that yard was black, not yellow. Appellant did not testify and relied for his defense entirely on the alibi supplied by his wife and her mother, who lived downstairs at the same address.

---

**I.** Appellant's wife stated the time was 1:40. The difference is immaterial.

Appellant's primary attack on his conviction is twofold: (1) he was prejudiced by the use at trial of evidence obtained as the result of an illegal search, and (2) there was no showing of intent to steal, an element of the offense charged.

█ The record reveals an unbroken police search for the intruder from the moment they were called immediately after he fled. This search included a careful step-by-step process of identification, location and finally interrogation before arrest. At the moment the police were admitted to the house, they had ample probable cause to believe that appellant had committed a felony. The statements of the young girl, the neighbor boy, the liquor store proprietor, and appellant's neighbors adequately identified appellant as the intruder. When the police partially verified these statements by determining that a man named Artis did in fact live at a given address, they had established adequate probable cause, and were justified in making an arrest without a warrant.[2] We need not decide whether police entry was by permission or invitation, cf. Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649; Williams v. United States, 104 U.S.App.D.C. ——, 263 F.2d 487 since "if there was probable cause to make an arrest—as we hold there was—there was justification for at least the peaceable entry which here was made." Ellison v. United States, 1953, 93 U.S.App.D.C. 1, 3, 206 F.2d 476, 479. But see Miller v. United States, 1958, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (forcible rather than peaceable entry).

Our holding is not in conflict with Morrison v. United States.[3] There we held that "officers without a warrant cannot enter, even without actually breaking, a private dwelling to search for a suspected felon, no permission being given and no circumstances of necessitous haste being present." 262 F.2d at page 454. The primary authorities relied on for that holding were Miller v. United States, supra, and Accarino v. United States,[4] both involving physical breaking by the police to gain entry to a dwelling. The Morrison case did not involve an actual breaking, but it did involve a clearly illegal entry.

Here, whether or not consent[5] was given for the entry, it was not illegal. This legal entry was made in pursuance of an uninterrupted police search for appellant. Furthermore, there was no testimony at trial prejudicial to defendant which concerned police observations made in the course of a methodical, unpermitted search of appellant's premises as in the Williams case, supra. The testimony to which appellant now objects concerned casual observations which the police officer made while engaged in the lawful arrest of appellant. These factors readily distinguish the present case from Morrison v. United States, and Williams v. United States, supra.[6]

█ "[T]he validity of the arrest and search must be determined by its reasonableness in the light of the circumstances of the particular case."[7] As

2. See Draper v. United States, 1959, 79 S.Ct. 329; Smith v. United States, 103 U.S.App.D.C. 48, 254 F.2d 751, certiorari denied, 1958, 357 U.S. 937, 78 S. Ct. 1388, 2 L.Ed.2d 1552; Christensen v. United States, 1958, 104 U.S.App. D.C. ——, 259 F.2d 192.

3. 104 U.S.App.D.C. ——, 262 F.2d 449.

4. 1949, 85 U.S.App.D.C. 394, 179 F.2d 456.

5. See Williams v. United States, supra.

6. Nor was this a case where the police gained entry by falsely asserting that they had a warrant. See Gibson v. United States, 80 U.S.App.D.C. 81, 149 F.2d 381, certiorari denied O'Kelley v. United States, 1945, 326 U.S. 724, 66 S. Ct. 29, 90 L.Ed. 429. The police here did not make any false statements in order to gain entry.

7. Mills v. United States, 90 U.S.App.D.C. 365, 366, 196 F.2d 600, 601, certiorari denied, 1952, 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643; see also Smith v. United States, supra; De Bruhl v. United States, 91 U.S.App.D.C. 125, 199 F.2d 175, certiorari denied, 1952, 344 U.S. 868, 73 S.Ct. 111, 97 L.Ed. 673.

this arrest was legal, the trial court properly permitted the police officer to testify as to the condition of appellant's shoes observed incident to and at the time of the arrest.

 As to appellant's other contention, we hold that there was sufficient evidence to permit a jury inference that appellant had entered "with intent to steal." In the circumstances of this case intent need not be shown by any specific acts or conduct; the unexplained presence of appellant in the darkened house near midnight, access having been by force and stealth through a window, is ample without more to allow an inference that he was there to steal. See Cady v. United States, 1923, 54 App.D.C. 10, 293 F. 829.

 That he committed the crime of assault on a girl after the illegal entry was completed does not call for a different conclusion. Although this is one objective fact which tends to indicate appellant's subjective intent to commit acts other than theft, it is not sufficiently strong to preclude a jury finding that the original intent had been to steal. Indeed there was no showing that before the entry appellant was aware of the girl's presence in the house. Appellant offered no evidence tending to suggest that the accused lacked motive for theft. In the absence of some such evidence the verdict cannot be disturbed.

Affirmed.