THE STATE OF OHIO *v.* TURKAL ET AL.
CITY OF COLUMBUS *v.* BOWDLE ET AL.

(Nos. 30420, 30421, 30429, 30422 & 30424—
Decided December 7, 1971.)

Franklin County Municipal Court, Criminal Division.

*Mr. James J. Hughes, Jr.,* city attorney, *Mr. Thomas S. Erlenbach,* city prosecutor, and *Mr. Michael Norris,* assistant city prosecutor, for plaintiffs.

*Messrs. Campbell, Boyland & Schwarzwalder* and *Mr. William E. Boyland,* for defendants.

FRANCIS, J. Defendant Turkal has been charged with unlawful possession of hallucinogenic drugs in violation of R. C. 3719.41 and unlawfully keeping a house for the keeping of said drugs contrary to R. C. 3719.46. Defendant

Patricia Carr is likewise charged with unlawful possession of said drugs. Defendant Bowdle and Brademan are each charged with a violation of Sec. 2387.02 of the City Code of Columbus, which ordinance is known as the "Suspicious Person" law and which prohibits, among other things, a person being found in an establishment where such drugs are sold or used in violation of state law.

A motion to suppress evidence was filed, testimony was taken in support of the motion, and counsel have furnished briefs.

The facts are that about 3:30 a. m. on October 25, 1971, as many as 15 Columbus police officers went to 1852 Summit Street in search of Robert "Happy" Long. The officers had a warrant for the arrest of Long. Happy Long had escaped from police custody in a wounded condition about three weeks before. Police Officer Charles Nash, who was examined by the defense by way of *voir dire* and as upon cross-examination, testified that Happy Long was a priority suspect and that at least five officers were armed with shotguns. Officer Nash further testified that when they knocked on the door the door was opened and in response to the question of who went in first, testified that he went in second or third behind a man with a shotgun, and further that "we all entered at about the same time."

According to Mr. Nash, he had a conversation with defendant Turkal near the door which may be summarized as follows:

"Who lives here?"

"I do."

"We are police officers looking for Happy Long."

"He is not here."

"Can we look for him."

"Go ahead. He is not here."

Upon being called as a witness Turkal acknowledged that he was told by the police officers that they were looking for Happy Long. He testified that he replied that there was no one there by that name—no one to look for, but that they could go ahead and look. Turkal also testified that there was a great deal of confusion; that the police

officers came into the room in a rush; that the police officers were rushing around; that shotguns were pointed at him and his guests; that they were told "everybody stand up and get against the wall;" and that they were standing against the wall until, in the words of Turkal, "some of them brought us into the living room."

The officers searched throughout the house. They did not find Happy Long. The testimony shows he was not there. The police officers did find a quantity of Cannabis Sativa in a room upstairs where a fifth person (not before the court) was sleeping. More or less on the way out, a police officer noticed a plastic container, or sandwich baggie on the table in open view, which turned out to contain Cannabis Sativa. Someone suggested to look into the already opened purse of defendant Carr and more marijuana was found. The arrests on the charges before the court followed.

The police officers did not have a search warrant.

The question presented is whether the search and seizure was in violation of the 4th Amendment, or whether the search was validated by the consent given by the tenant of the premises for the officers to look for Happy Long.

Since searches and seizures made without a proper warrant are generally to be regarded as unreasonable and violative of the Constitution, consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. *Amos* v. *U. S.*, 255 U. S. 313; *United States* v. *Kelih*, 272 F. 484; *Simmons* v. *Bomar*, 349 F. 2d 365.

The burden is upon the government, when the issue is raised, to show that such consent was unequivocal, specific, and given freely and intelligently. *Bumper* v. *N. Carolina*, 391 U. S. 543; *Karwicki* v. *U. S.*, 55 F. 2d 225; *Kovach* v. *U. S.*, 53 F. 2d 639.

Thus, an "invitation" to enter a house extended to armed officers of the law who demand entrance, is usually to be considered as admittance secured by force. *Johnson* v. *U. S.*, 333 U. S. 10; *Washington* v. *U. S.*, 263 F. 2d 742, cert. den. 359 U. S. 1002. A like view has been taken where

an officer displays his badge and declares that he has come to make a search (*U. S.* v. *Slusser*, 270 F. 818), even where the occupant says, "All right" (*U. S.* v. *Marra*, 40 F. 2d 271). A finding of consent in such circumstances has been held to be "unfounded in reason" (*Herter* v. *U. S.*, 27 F. 2d 521). The United States courts have aptly stated that "intimidation and duress" are almost necessarily implicit in such situations. *Judd* v. *U. S.*, 190 F. 2d 649.

In order to meet the burden of showing consent and waiver of basic constitutional right, the state must do more than show a mere submission or acquiescence to a claim of lawful authority. (*Johnson* v. *U. S.*, *supra*; *Bumper* v. *N. Carolina, supra.*)

The motion to suppress is therefore hereby sustained in each case.

Jury demands having been filed, the cases are ordered reassigned for pre-trial and further proceedings according to law.

*Motion sustained.*