**Roy MASSEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 7364.**

District of Columbia Court of Appeals.

Argued Jan. 31, 1974.

Decided June 4, 1974.

---

C. Roger Nelson, Washington, D. C., appointed by this court, for appellant.

E. Lawrence Barcella, Jr., Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before FICKLING, GALLAGHER and PAIR, Associate Judges.

GALLAGHER, Associate Judge:

After a trial by jury appellant was found guilty of second-degree burglary [1] and sentenced to a term of one to three years with execution of two and one-half years suspended and probation imposed in lieu thereof. In this appeal it is argued with considerable force that the trial court erred (a) in denying appellant's motion for judgment of acquittal for failure of proof that appellant entered the premises with the intent to steal, (b) in failing to instruct the jury on the lesser included offense of unlawful entry, and (c) in refusing to give

1. D.C.Code 1973, § 22–1801(b).

a requested instruction on identification. We disagree and affirm.

I

Viewing the evidence in the light most favorable to appellee, as we must, the facts are these. At about 3:00 a. m. on November 30, 1972, Mrs. Beatrice Waiters was in her residence when she heard knocking and hammering on a door. She looked out her back window and observed a man kicking and pounding on a door of the nearby New Jersey Bar and Grill. She saw him stop for a while, run across the street, come back again, pound on the door some more and finally enter the building. Mrs. Waiters then called Mr. Joseph M. Miller, the proprietor of the New Jersey Bar and Grill, and informed him that someone was breaking into his establishment. She then called the police.

Officer Kneiser received the radio run of the incident, responded to the scene, and noticed the splintered door. From her window, Mrs. Waiters advised the officer that she had reported the apparent breaking and entry and that the individual was still inside. The officer then entered the storeroom area and saw someone back in that darkened area. He was asked to halt, but instead the figure disappeared into another room and footsteps were heard running up a stairway.

The building was then surrounded by police and Officer Kneiser prepared to enter the building again with the assistance of the canine patrol. Upon entry he called for anyone in the building to come out and at this time appellant came down the stairs. Appellant was clad only in his underwear and was rubbing his eyes. Appellant followed the officers upstairs, telling them that he was staying with a Mr. Matthews, who resided over the bar and grill, and that he had heard nothing unusual. The search of the upstairs area revealed nothing of a suspicious nature and the officers returned to search the storeroom area.

There they noticed several clothes racks and saw that several items of clothing were folded and stacked on the floor. Appellant, then more fully dressed, came back down the stairs and Officer Kneiser called Mrs. Waiters to her window and asked appellant to step outside. As he did so, Mrs. Waiters pointed at him and said, "Yes, that's him." As they were leaving, the officers recovered appellant's coat and shoes near the storeroom door where the clothes racks were located. They showed the coat to Mrs. Waiters who stated that it "looked like the one the man had on when he broke in."

Mr. Miller, the owner of the bar and grill, testified that appellant frequented his establishment and that he had been there on the evening of November 29. He closed the establishment around 2:40 a. m. and offered appellant a ride home. He drove him to a tourist home a few blocks away. After arriving home himself, Mr. Miller received Mrs. Waiters' call that his premises were being broken into and he immediately returned to the bar and grill. Upon arriving, he noticed that the side door that he had earlier locked and bolted had been broken into. He also noticed that clothing he was keeping for a tailor which had previously been hanging on racks was then on the floor next to a box which, although empty earlier, now contained some of the clothes. Mr. Miller had not given appellant permission to enter the premises after hours or to take the clothes off the rack.

Mr. Miller also testified that the second floor of the building was occupied by Gertrude Mitchell, an elderly lady, and Frederick Matthews, a retarded mute cared for by Mr. Miller. At the scene Officer Kneiser had asked Mr. Matthews whether he had given appellant permission to sleep in the room and he had been "very emphatic with his no's." Ms. Mitchell, the other resident of the second floor, testified that she had not let appellant in and that upon hearing the sound of voices downstairs

she had seen a stranger in an undershirt getting into Mr. Matthews' bed.

Appellant took the stand in his own defense. He testified basically that Ms. Mitchell had let him into the premises, that he had taken his shoes and coat off, left them downstairs, and then gone upstairs to sleep with Mr. Matthews. He stated that he entered Mr. Matthews' room, woke him up, motioned to him that he wanted to sleep there and then went to sleep. His next recollection was being awakened by police with flashlights asking if he and Mr. Matthews had heard anything.

## II

■ Appellant's primary contention here is that the "contradictory evidence offered by the government to prove intent was . . . insufficient to permit the jury to find beyond a reasonable doubt that [he] entered with the intent to steal." We disagree.

■■ A requisite element of proof in a prosecution under our burglary statute, D. C.Code 1973, §§ 22-1801(a) and (b), and those of most jurisdictions, is that the defendant have an intent to steal or commit a crime at the time of entry. *See* Franklin v. United States, D.C.App., 293 A.2d 278 (1972). It is not necessary that the intended theft or crime be consummated. United States v. Fox, 140 U.S.App.D.C. 129, 433 F.2d 1235 (1970); Cady v. United States, 54 App.D.C. 10, 11, 293 F. 829, 830 (1923). The requisite intent, of course, is a state of mind particular to the accused and unless such intent is admitted, it must be shown by circumstantial evidence. United States v. Fox, *supra*. "Standing alone, unauthorized presence in another's premises hardly supports an inference of entry with a criminal purpose, but when aided by other circumstances it very well might." *Id.* at 131, 433 F.2d at 1237 (footnotes omitted).

■ These "other circumstances" need not include the actual commission of a crime within the premises. They are such circumstances as might lead reasonable people, based upon common experience, to conclude beyond a reasonable doubt that the accused possessed the requisite intent. These might include "unexplained presence . . . in [a] darkened house near midnight, access having been by force and stealth through a window," Washington v. United States, 105 U.S.App.D.C. 58, 61, 263 F.2d 742, 745, cert. denied, 359 U.S. 1002, 79 S.Ct. 1142, 3 L.Ed.2d 1032 (1959); arrest in early morning hours while hiding with gloves, screwdriver and flashlight near site of recently reported entry into home, Johnson v. United States, D.C.App., 293 A.2d 269 (1972); presence in a building through which entry to another building was being attempted by making a hole through a party wall where dust on trousers matched that in area of attempted entry, Valentino v. United States, D.C.App., 296 A.2d 173 (1972); forced entry and trying of doors inside home after throwing a brick through a window, United States v. Whitaker, 144 U.S.App.D.C. 344, 447 F.2d 314 (1971); or presence in a warehouse amongst scattered papers, opened drawers and office equipment which had been moved into a hall, Hebble v. United States, D.C.App., 257 A.2d 483 (1969).

In this case it is argued that the evidence was insufficient to support a finding of an intent to steal. In this regard inconsistencies in Mr. Miller's pretrial statements and in-court testimony are pointed up as well as "inherent weaknesses" in his testimony concerning the clothes. Any inconsistencies or weaknesses in this testimony were, however, for the trier of fact to resolve.

Here there was evidence that appellant made an early morning forcible entry, prepared to carry away items of value (clothes), and attempted to conceal his actions inside the premises. We think that there was ample evidence to withstand a motion for judgment of acquittal.

In support of his theory appellant relies mainly on the Circuit Court's opinion in

United States v. Melton, 491 F.2d 45 (D. C.Cir. 1973).[2] There, the court, over a vigorous dissent, reversed a burglary conviction and, upon grant of rehearing, remanded for entry of an unlawful entry conviction or indictment and prosecution for forcible entry, at the option of the government. But that decision, on the actual state of that record, does not commend itself to us. So that even if the facts here were on all fours,[3] we would not adopt *Melton*.[4] Our basic disagreement with *Melton* is that we see no reason to downgrade as a matter of law the act of breaking and entering the home of another in the dark of night as *Melton* seems to do. As a matter of fact, those elements have been viewed in some jurisdictions over the years as sufficient in themselves to justify an inference that the entry was with the intent to steal. *See, e. g.,* Johnson v. United States, *supra,* 293 A.2d at 271, and cases cited in United States v. Melton, *supra,* 491 F.2d at 51 (MacKinnon, J., dissenting) and United States v. Thomas, 144 U.S.App.D.C. 44, 49 n.14, 444 F.2d 919, 924 n.14 (1971). *See also* Commonwealth v. Wygrzywalski, 291 N.E.2d 401 (Mass.1973); Hall v. State, 490 S.W.2d 495 (Tenn.1973); People v. Hayes, 11 Ill.App.3d 359, 296 N.E.2d 649 (1973); People v. Bonner, 49 Mich.App. 153, 211 N.W.2d 542 (1973); Lyons v. State, 516 P.2d 283 (Okl.Cr.1973); Anaya v. State, 500 S.W.2d 809 (Tex.Cr.App. 1973); State v. Carter, 5 Wash.App. 802, 490 P.2d 1346 (1971); State v. Morelock, 164 N.W.2d 819 (Iowa 1969); People v. Hinson, 269 Cal.App.2d 573, 75 Cal.Rptr. 223 (1969); State v. Hopkins, 11 Utah 2d 363, 359 P.2d 486 (1961). *But see* Griffin v. State, 276 So.2d 842 (Fla.App.1973); State v. Kahinu, 53 Hawaii 646, 500 P.2d 747 (1972); State v. Harris, 40 Wis.2d 200, 161 N.W.2d 385 (1968). Though we do not view *Melton* as being especially realistic, there were present here, in any event, additional circumstances from which the jury could reasonably infer an intent to steal.

■ When a nighttime forcible entry into premises is discovered almost at its inception it would be unrealistic to require stark, undeniable proof of an intent to steal in order to sustain a charge under D. C.Code 1973, § 22–1801. In these times of silent burglar alarms, prompt and efficient law enforcement responses and, as here, an alert citizenry, the available proof of an intent to steal is usually circumstantial. There are no hard and fast rules to be laid down on what is required to establish the element of intent necessary to this crime. Each case will have its own special facts and circumstances. Where the evidence is sufficient to justify a reasonable inference that the requisite intent existed, this court will not disturb the verdict if it otherwise meets the required standards to support a guilty verdict.

### III

Appellant's next assignment of error relates to the trial court's failure to instruct the jury on the lesser included offense of unlawful entry. Concededly, no request for such an instruction was made as required by Super.Ct.Cr.R. 30. The issue thus becomes whether the trial court's failure, *sua sponte,* to charge the jury on unlawful entry was plain error.

■ We conclude that there was no plain error on the facts of this case. Additionally, appellant's defense was that Ms. Mitchell let him in and that he intended to sleep in Mr. Matthews' room. This defense left no room for a factual basis supporting a claim of unlawful entry so an instruction on that crime was not required.

---

2. *Melton* was decided on September 26, 1973. The government petitioned for rehearing and rehearing en banc and upon rehearing the panel decision was modified and en banc consideration denied on January 11, 1974.

3. There appears to be a dispute between the majority and the dissent in *Melton* as to the existence in the record of some material facts.

4. The decision in *Melton* is not binding on this court. M. A. P. v. Ryan, D.C.App., 285 A.2d 310 (1971).

■■ Lastly, we cannot say it was reversible error, considering all the circumstances of this case and the instructions-given, for the trial court to refuse to give the standard jury instruction on identification.[5] While it is better practice to give such an instruction when requested in a case where identification is in issue, Macklin v. United States, 133 U.S.App.D.C. 139, 143, 409 F.2d 174, 178 (1969), Jones v. United States, 124 U.S.App.D.C. 83, 88, 361 F.2d 537, 542 (1966), the failure to do so under these particular circumstances, where it was not a telling issue, did not constitute prejudicial error.

There appearing no error requiring reversal, the judgment is

Affirmed.

---

5. Criminal Jury Instructions for the District of Columbia, Standard Instruction, 5.06 (2d ed. 1972).