**Arthur E. BYRD, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11156.**

District of Columbia Court of Appeals.

Argued Feb. 8, 1978.

Decided July 5, 1978.

Frederick J. Sullivan, Washington, D. C., appointed by this court, for appellant.

Carol E. Bruce, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KELLY, KERN and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

Appellant was convicted [1] by a jury on June 10, 1976, of four counts of first-degree murder, four counts of first-degree felony murder, one count of first-degree burglary, and two counts of armed robbery. The convictions were the result of appellant's participation in the murders of four individuals at 1401 Columbia Road, Northwest, on July 30, 1975. Mary Louise Brown, Tanya Small, Arthur Holland, and Wilhemina Rogers were found on August 1, 1975, in an apartment which Brown and Small shared with Holland, bound, gagged, and dead of gunshot wounds to the head. The facts will be developed more fully *infra,* in connection with the particular issues raised on appeal.

## I. THE ARREST WARRANT

Appellant first contends that, as a matter of law, the information provided in the affidavit in support of the warrant for his arrest was insufficient to establish probable cause. A motion to suppress filed in connection with this warrant was denied on June 2, 1976.

The victims' lifeless bodies were discovered on August 1, 1975. On August 3, following preliminary investigation, Metropolitan Police Detective William G. Steakley prepared an affidavit in support of a warrant for appellant's arrest. The warrant was issued, and appellant was arrested the following day, August 4.

The affidavit in support of this warrant presented the issuing judge with the following information. (1) Four victims were discovered bound, gagged and blindfolded, dead of gunshot wounds to the head. The premises on which they were found had been ransacked. One of the victims was identified as Mary Louise Brown. (2) Police found in Ms. Brown's wallet a photograph of appellant. (3) A neighbor was shown this photograph and recalled that between 11 a. m. and 2 p. m. on the day in question, the pictured individual had come to her door in search of Ms. Brown. (4) Police found in Ms. Brown's wallet a savings account withdrawal slip. Bank records established that the withdrawal had been made on the morning of the day in question, and the teller and a second witness identified the photograph of appellant as being of the man who had accompanied Ms. Brown to the bank that morning and stood beside her at all times. (5) Police found a letter addressed to Ms. Brown from a Lorton inmate named Arthur. Upon further investigation, police learned that this inmate was the same man whose photograph they had taken from Ms. Brown's wallet—appellant Arthur Eugene Byrd. (6) Police interviewed a witness who stated that Ms. Brown had said recently that appellant had threatened to kill her on a prior occasion.

The issuing judge found that the facts recited above satisfied the legal standard for probable cause to issue an arrest warrant. That standard was addressed in *Bailey v. United States,* 128 U.S.App.D.C. 354, 389 F.2d 305 (1967):

Probable cause is a plastic concept whose existence depends on the facts and circumstances of the particular case. It has been said that " '[t]he substance of all the definitions' of probable cause 'is a reasonable ground for a belief of guilt.' " Much less evidence than is required to establish guilt is necessary. The stan-

---

1. Also convicted was codefendant Reginald Lewis, who originally noted an appeal but withdrew it without prejudice to renew.

dard is that of "a reasonable, cautious and prudent peace officer" and must be judged in the light of his experience and training. The police must have enough information to "warrant a man of reasonable caution in the belief" that a crime has been committed and that the person arrested has committed it. A finding of probable cause depends on the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [*Id.* at 357–58, 389 F.2d at 308–09 (citations omitted).]

*See also Draper v. United States,* 358 U.S. 307, 312, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Munn v. United States,* D.C.App., 283 A.2d 28, 30 (1971).

 Our review in the instant case must be undertaken mindful that the issuing judge's determination of probable cause is entitled to great deference by a reviewing court. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Indeed, in resolving such a case, a reviewing court should give weight to the preference to be accorded to warrants, *United States v. Ventresca,* 380 U.S. 102, 105–06, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), and the issuing judge's determination may be upheld on fewer indicia of probable cause than would be a like determination made by a police officer. *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

 We hold that the issuing judge had facts ample to conclude, as he must, that a crime had been committed, and from which he could infer a sufficient probability that appellant was the perpetrator. We thus find no error in the trial court's denial of appellant's motion to suppress.

## II. THE SEARCH WARRANT

On August 3, 1975, some hours after the issuance of the warrant for appellant's arrest, Detective Steakley prepared an affidavit in support of a warrant to search areas under appellant's control and to which he had access at 1719 13th Street, Northwest.

This was the address of the District of Columbia Department of Corrections Halfway House at which appellant resided as a result of a prior conviction. The affidavit in support of the search warrant recited the following: (1) A multiple homicide had been committed; the victims had died of gunshot wounds to the head. (2) A warrant had been issued for appellant's arrest. (3) Appellant resided at the above address. (4) The apartment in which the killings took place had been looted. Police found at the scene an empty box which had contained a Harrington & Richardson .32 caliber revolver, 2″ barrel, blue finish, serial No. AN–15769. Police discovered nearby two live .32 caliber rounds of ammunition, and believed the revolver had been used to kill the victims and then taken by the perpetrator.

A warrant was issued for the search and seizure of the revolver, daily logs maintained at the halfway house for the purpose of establishing appellant's whereabouts at the time in question, and other evidence and instrumentalities of the offense.

Appellant argues that the facts recited in the affidavit were insufficient to underlay a finding of probable cause, and that the warrant as issued was vague and overbroad. A motion to suppress was filed in connection with this warrant, and was denied on June 2, 1976. We hold that there was probable cause to search, and that the warrant was neither fatally vague nor overbroad. As such, appellant's motion was properly denied.

 With search warrants, as with arrest warrants, we review with deference the issuing judge's determination of probable cause, *Spinelli v. United States, supra,* and test such a determination in a common sense and realistic manner. *United States v. Ventresca, supra,* 380 U.S. at 108, 85 S.Ct. 741. We are satisfied that the issuing judge had good reason to believe that the items sought—evidence and instrumentalities of a brutal, multiple homicide—would be found on the premises to be searched. The warrant was issued within two days of

the discovery of the victims' bodies. The same judge had issued an arrest warrant for appellant earlier that day based on a detailed affidavit that indicated a strong likelihood that appellant was implicated. Police had reason to believe, and informed the issuing judge by affidavit, that a gun belonging to one of the victims had been taken by one of the perpetrators. The condition of the ransacked apartment in which the murders were committed suggested that property of one or more of the victims had been taken by the murderers. The halfway house logs were desired in order to help police establish appellant's whereabouts at the relevant time. The foregoing information, considered in the light of the convincing evidence of appellant's involvement, sufficed to support a finding of probable cause to issue a search warrant.

 With respect to appellant's assertion that the warrant as issued was vague and overbroad, we hold that the warrant identified the place to be searched and the property to be seized with reasonable particularity, *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *United States v. Ketterman*, D.C.App., 276 A.2d 243 (1971), and did not give rise to the kind of general search against which the Fourth Amendment was intended to protect. *See Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The warrant described the firearm and ammunition in detail and referred with particularity to the daily log maintained for halfway house residents. In this context, and because the ransacked condition of the murder scene made it impossible to ascertain in advance exactly what had been removed from the premises, general reference to "other evidence and instrumentalities" was not unreasonable. We affirm the trial court's denial of appellant's motion to suppress.[2]

## III. SUFFICIENCY

Appellant's remaining contentions relate to the trial court's denial of his motions for judgment of acquittal. He argues first that the government failed to present evidence sufficient to compel the conclusion beyond a reasonable doubt that he was indeed the perpetrator of the offenses charged. He argues additionally that the evidence adduced at trial was not legally sufficient to prove the premeditation and deliberation requisite for murder in the first degree, the intent necessary for a conviction of burglary, and the taking which must underlay a conviction of robbery. Appellant maintains, finally, that the insufficiency of evidence of burglary and robbery requires that we reverse his felony murder convictions based on those offenses.

 We review these contentions mindful that an appellate court will not overturn a conviction on grounds of insufficiency if the evidence presented at trial reasonably permits a finding of guilt beyond a reasonable doubt. *See, e. g., Wooten v. United States*, D.C.App., 343 A.2d 281 (1975); *Curley v. United States*, 81 U.S.App.D.C. 389, 160 F.2d 229, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). On appeal, we review the evidence in a light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *Johnson v. United States*, D.C.App., 293 A.2d 269, 271 (1972); *Banks v. United States*, D.C.App., 287 A.2d 85, 87 (1972). No legal distinction is made between circumstantial and direct evidence. *Holland v. United States*, 348 U.S. 121, 139–40, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Fench*, 152 U.S.App.D.C. 325, 333, 470 F.2d 1234, 1242 (1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

---

2. In its brief and at oral argument, the government suggested that no search warrant was necessary in this case because the place to be searched, appellant's residence, was a halfway house and thus equivalent to a penal institution in which residents are not afforded the full protection of the Fourth Amendment. *See Lanza v. New York*, 370 U.S. 139, 142, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962). Our disposition of the instant contention makes it unnecessary to address this argument at this time.

In the instant case, evidence against appellant was entirely circumstantial, but nevertheless formidable. The following summarizes what the jury considered: Appellant was acquainted with one of the victims, Ms. Brown, and had been looking for her on the morning of the day of her murder in the apartment building in which the crimes later took place. Two witnesses testified that appellant accompanied Ms. Brown to the bank that morning and stood with her as she withdrew $1,000. Later that day, appellant and his codefendant purchased $672 worth of clothing from a local retailer; and paid in cash. Police found jewelry and coins belonging to Ms. Brown in appellant's room following the homicides. Police recovered from appellant's girl friend a ring belonging to Ms. Brown and a watch belonging to another victim, Ms. Rogers. Appellant had given his girl friend these items on the day after the murders, and attempted to retrieve them from her following his arrest. Several witnesses testified that they had seen much of the jewelry in question in the possession of the victims shortly before the murders, casting doubt on appellant's assertion that the incriminating jewelry had been given to him by Ms. Brown months earlier.

A witness testified that subsequent to the search of the halfway house, but prior to appellant's arrest, appellant, aware of the search, sought a disguise and a gun,[3] and subsequently admitted killing the "little girl." Reference was likely to Tanya Small, who was eight years old at the time of her death.

Police found in codefendant Lewis' home a box of .32 caliber ammunition. A witness testified that he had sold a box of ammunition meeting that description to Ms. Brown in April 1975. Another witness testified that Ms. Brown had known appellant since 1974, when she began visiting him at Lorton as part of a community program, and that appellant had often commented to fellow inmates on Ms. Brown's jewelry and coins, even boasting to one that "we might be rich someday."

Subsequent to his arrest, appellant told police that he had not seen Ms. Brown for two or three months. This assertion took on the character of a false exculpatory statement in light of strong testimony placing appellant with Ms. Brown in the bank on the morning of the murders.[4]

 The evidence was ample to establish beyond a reasonable doubt appellant's identity as one of the perpetrators. Moreover, the circumstances demonstrated the premeditation and deliberation on which a jury could reasonably base conviction of murder in the first degree.[5] The victims were found bound, gagged, and blindfolded, murdered in execution fashion.

 With respect to intent requisite for burglary, the government asserts correctly that appellant's presence with Ms. Brown in the bank on the morning of the murders, coupled with his knowledge of her large collection of jewelry and coins, gave rise to the inference that the perpetrators entered the apartment intending to steal. These were "such circumstances as might lead reasonable people, based on common experi-

---

**3.** This contradicted appellant's testimony that when he was arrested he was not aware that his room had been searched and that the police were looking for him.

**4.** Appellant testified that on the day of the murders, he left the halfway house early to see a man about a job, but was not able to meet the prospective employer. He then called codefendant Lewis, and the two men went shopping. He denied all involvement in the crimes, and denied having accompanied Ms. Brown to the bank that morning. Appellant claimed that Ms. Brown had given him jewelry and money both prior and subsequent to his release from

Lorton. He was impeached by a 1975 robbery conviction and a 1972 armed robbery conviction.

**5.** With respect to first-degree murder, it is not the length of time but the reflection in the mind of the accused concerning his design and purpose to kill which supplies the requisite premeditation and deliberation. *Harris v. United States*, D.C.App., 373 A.2d 590 (1977); *Austin v. United States*, 127 U.S.App.D.C. 180, 382 F.2d 129 (1967). Premeditation can be inferred from surrounding facts and circumstances. *Harris v. United States, supra.*

ence, to conclude beyond a reasonable doubt that the accused possessed the requisite intent." *Massey v. United States*, D.C.App., 320 A.2d 296, 299 (1974).

 Finally, the formidable evidence recited above illustrates the frivolity of appellant's sufficiency claims with respect to his armed robbery convictions.[6]

Accordingly, appellant's conviction is

*Affirmed.*

---

6. Affirmance of appellant's burglary and armed robbery convictions is fatal, of course, to his contention with respect to the felony murder convictions based on those offenses.