Theodore PARKER, a/k/a Theodore W. Parker, a/k/a James Wilson, Appellant,

v.

UNITED STATES, Appellee.

No. 80–671.

District of Columbia Court of Appeals.

Submitted Oct. 15, 1981.

Decided Aug. 12, 1982.

Richard H. Ringell, Washington, D. C., appointed by the court, was on the brief for appellant.

Charles F. C. Ruff, U. S. Atty. at the time the brief was filed, with whom John A. Terry and Harold L. Cushenberry, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN,* Chief Judge, and MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

Appellant was tried with a codefendant and convicted by a jury on two counts of grand larceny[1] from the hotel rooms of Messrs. Cutcliffe and Kehoe, and on one count of second-degree burglary[2] of Cutcliffe's room.[3] Appellant appeals only his burglary conviction. He contends that the trial court erred in not granting his motion for judgment of acquittal based on the failure of the government to prove he possessed the required criminal intent at the time he entered the guest rooms he was accused of burglarizing at the Capital Hilton Hotel. We affirm.

The government presented the following evidence bearing on the intent issue: Appellant and a codefendant were employed as window washers at the Capital Hilton Hotel. On the day in question, they were at work and at all relevant times were assigned to the floor where Cutcliffe's and Kehoe's rooms were located. A tag had

---

* Chief Judge NEWMAN concurs in the result.

1. D.C.Code 1973, § 22–2201.

2. D.C.Code 1973, § 22–1801(b).

3. The jury acquitted appellant of burglarizing Kehoe's room.

been hung on the closed doors of those rooms indicating that the windows were being washed. Appellant signed a pawn ticket for a camera taken from Cutcliffe's room; his codefendant signed a pawn ticket for the camera taken from Kehoe's room.

■ D.C.Code 1973, § 22–1801 requires the government, in order to support a conviction of burglary, to prove that a person "[broke] and enter[ed] or enter[ed] without breaking, ... with intent ... to commit any criminal offense, ...." This intent must be present at the time of entry. *Franklin v. United States,* D.C.App., 293 A.2d 278, 279 (1972). "The requisite intent, of course, is a state of mind particular to the accused and unless such intent is admitted, it must be shown by circumstantial evidence." *Massey v. United States,* D.C. App., 320 A.2d 296, 299 (1974) (citing *United States v. Fox,* 140 U.S.App.D.C. 129, 433 F.2d 1235 (1970) (per curiam).

The evidence is sufficient to support a finding, beyond a reasonable doubt, that appellant was in these rooms at approximately the time when both thefts occurred. However, because appellant had authority to be there as a window washer, we confront the difficult question whether a reasonable juror could conclude beyond a reasonable doubt that appellant entered Cutcliffe's room with the intent, *at the time of entry, to commit a criminal offense.*

In *White v. United States,* D.C.App., 300 A.2d 716 (1973), this court held that possession of recently stolen property, while sufficient for "an inference that the possessor [appellant] is the person who stole it," *id.* at 718 (citations omitted), "could not give rise to an inference respecting the commission by appellant of ... burglary," *id.* at 719, since "there was absolutely no evidence of a breaking, nor was there other evidence calculated to place appellant within the building." *Id.* at 720 (citations omitted). Here, in contrast, there was evidence that appellant entered. But was there other evidence that would support the required finding that appellant intended, upon entry, to commit a crime, rather than merely succumbing to temptation upon seeing the camera while washing windows?

■ If this were a single entry and theft the answer very likely would be no, for there probably would be a reasonable doubt that a person—having legitimate business in the room—intended, nonetheless, to commit a crime when he entered. But here we have two entries and thefts. Appellant was convicted of two larcenies, from rooms 627 and 628 on the same floor of the hotel, at approximately the same time on January 30, 1979—the very day on which the evidence tends to prove appellant and his codefendant each signed a pawn ticket at the same pawn shop for Cutcliffe's and Kehoe's cameras, respectively.[4] The incidents underlying these two larceny convictions—from which no appeal has been taken—manifest enough of a theft pattern for a reasonable jury to conclude beyond a reasonable doubt[5] that appellant intended to steal when he entered at least one of the rooms, Cutcliffe's.[6]

In convicting appellant of two counts of grand larceny but only one count of burglary, *see* note 3 *supra,* the jury apparently perceived that appellant and his codefendant were acting together but elected to convict appellant of burglary only with re-

---

4. The codefendant signed in his own name. A handwriting expert testified it was "highly probable" that appellant, using an alias, had signed the pawn ticket representing Cutcliffe's camera.

5. *Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967); *Curley v. United States,* 81 U.S.App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

6. Appellant's codefendant testified in his own defense, admitting that both he and appellant were in rooms 627 and 628 together when the codefendant saw the cameras, but claiming that he (codefendant) returned alone to the rooms, took both cameras, and gave one to a stranger who helped him find a suitable pawn shop. The jury was free to disbelieve this testimony insofar as it exonerated appellant and to believe instead the handwriting expert who found it "highly probable" that appellant had signed the pawn ticket. *See* note 4 & accompanying text *supra.*

spect to the room from which the pawn ticket evidenced he personally had taken the camera. The record supports the jury's perception and permits that verdict.

*Affirmed.*

MACK, Associate Judge, dissenting:

Burglary requires unlawful entry with intent to commit a crime at the time of such entry. The government has not proved intent. The majority's recitation of evidence bearing on intent to burglarize amounts to nothing more than the fact that appellant (who along with a codefendant had the lawful right to be present at the site of the crime) had signed a pawn ticket for a camera taken from one of the rooms. The majority implicitly recognizes, as it must, that these facts are in no way comparable to those presented in other cases in which we found sufficient evidence to have been presented to support a reasonable inference that an appellant possessed the requisite intent at the time of entry to support a conviction of burglary. *See Massey v. United States,* D.C.App., 320 A.2d 296 (1974) (evidence presented of an unauthorized 3 a. m. forcible entry into a bar and grill coupled with the suspect's apparent willingness to carry away items of value (clothes) and his attempt to conceal his actions); *Valentino v. United States,* D.C. App., 296 A.2d 173 (1972) (arresting officer, several hours after a midnight check of the common wall of a building from which bricks had been removed, returned to find a larger hole in the common wall, dirt and tools on the floor and the defendant whose pants were dirty with dust which matched that found in the building); *Franklin v. United States,* D.C.App., 293 A.2d 278 (1972) (accused observed wearing a department store clerk's jacket, walking in an area used by store personnel and carrying an inflatable shopping bag normally used by shoplifters); *Hebble v. United States,* D.C.App., 257 A.2d 483 (1969) (suspect found in a warehouse at 2:15 a. m. amidst open desk drawers and scattered papers as well as typewriters and an adding machine which had been moved out into a hallway);

*Washington v. United States,* 105 U.S.App. D.C. 58, 263 F.2d 742, *cert. denied,* 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959) (government proffered evidence of the defendant's unexplained midnight presence in a darkened house, that presence having been accomplished by forcing open a window).

Recognizing the weakness of its position, the majority seeks out "other evidence" to justify its conclusion that there was sufficient circumstantial evidence to show intent to burglarize. It reasons that since there were two larcenies committed, the government proved conduct sufficient to show an intent to engage in a "theft pattern." It is worth noting, although appellant has not urged it here, that on the evidence adduced, appellant could properly have been convicted of only *one* larceny—and that, only upon the "possession of recently stolen property" inference—an inference flowing from proof that he signed a pawn ticket for *one* of the cameras taken from one of the burglarized rooms. This circumstantial evidence is sufficient to support post-taking intent to "permanently deprive" necessary for this one larceny conviction. It is not sufficient to support a conviction for larceny of the other camera from another room because there is no basis on which possession of that camera by appellant can be predicated. There is thus no pattern of larceny attributable to appellant, and even if there were, this proof of intent to steal could not be further bootstrapped to impute an intent to steal *at the time of entry.* Cf. *White v. United States,* D.C.App., 300 A.2d 716, 719– 20 (1973) (government's inability to prove a breaking or to place appellant in the "burglarized" restaurant defeated burglary conviction while conviction of larceny based on unexplained or unsatisfactorily explained possession of recently stolen property was affirmed).

While the possession of recently stolen goods gives rise to an inference that the possessor has stolen the goods, it is not ordinarily proof or prima facie evidence of burglary. There should be some evidence of guilty conduct besides the bare possession of the stolen property, before

the presumption of burglary is superadded to that of larceny. [*Id.* at 719–20 (footnote omitted).]

The majority's position is particularly disquieting in view of the trial testimony. Appellant's codefendant (in exonerating appellant from responsibility) testified that the cameras were seen when the two lawfully entered the room, but that he alone returned later to the rooms, took the cameras and gave one to a stranger who helped him find a suitable pawnshop. This was the only direct testimony at trial bearing on entry and intent. To merely suggest, as does the majority, that the jury was "free to disbelieve [this testimony]" is no answer. True, the jury could have disbelieved the codefendant's testimony that he gave one of the cameras to a stranger to pawn. To say, however, that the jury could have disbelieved the codefendant's testimony that he stole *both* cameras is to say that a jury can reach a verdict contrary to the evidence. I respectfully dissent.