Gregory A. SHELTON, Appellant,

v.

UNITED STATES, Appellee.

No. 85–337.

District of Columbia Court of Appeals.

Submitted Jan. 7, 1986.

Decided Feb. 25, 1986.

Craig Dean Katz, Washington, D.C., appointed by this court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, and Mona C. Mack, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK, FERREN, and TERRY, Associate Judges.

MACK, Associate Judge:

Appellant Gregory Shelton was charged with attempted second-degree burglary (D.C.Code §§ 22–103, –1801 (1981)) and malicious destruction of property (id. § 22–403). A jury returned a verdict of guilty on both counts, whereupon appellant was sentenced to two consecutive terms of one year's imprisonment. On this appeal he challenges, on the ground of insufficient

evidence to convict, the trial court's denial of his motion for judgment of acquittal.[1] We hold that the evidence, although sufficient to convict for the misdemeanor of maliciously destroying property,[2] was not so on the charge of attempted second-degree burglary. We therefore affirm his conviction for malicious destruction of property and reverse and remand his conviction for attempted second-degree burglary.

## I

On the evening of October 21, 1984, Stephanie Howard was folding her laundry in a downstairs bedroom of her home in Southeast Washington. Her husband Nathaniel had fallen asleep in the living room while watching a ball game between the Dallas Cowboys and the New Orleans Saints. The television dimly illuminated that room and could be heard in the other ground floor rooms. The house at 3004 Ninth Street was well lit, with lights on in the kitchen, the dining room, the bathroom, two bedrooms and the upstairs landing. Both the front porch and the back porch were lit and a second floor floodlight shone out over the back yard.

At about 10:40 p.m., Mrs. Howard heard noises in the kitchen. Thinking that her husband was preparing something to eat, she decided to join him. As Mrs. Howard left the bedroom on her way to the kitchen, she encountered appellant Gregory Shelton standing in the middle of her dining room. Mrs. Howard's understandable reaction to the sight of this unknown intruder was to scream. Her husband was awakened by the sound and immediately came to her rescue from the adjoining living room.

Having overcome her initial shock, Mrs. Howard asked appellant what he was doing in their house. Appellant replied that he was looking for Jimmy. Mrs. Howard began to scream again. Her husband observed that appellant was making movements towards the living room. Mr. Howard, who is 6" 7' tall and weighs 220 pounds, then grabbed the considerably smaller appellant and told Mrs. Howard to call the police at 911.

While his wife did so, Mr. Howard became fearful that their children might be disturbed. He cautiously guided his captive through the living room and towards the front door, intending to lightly restrain appellant pending the arrival of the police. As Mr. Howard opened the door onto the front porch, appellant broke free from his grasp and dived through the side of the surrounding screen. Mr. Howard succeeded in catching up with appellant and warned him to wait by the gate until the police arrived. Appellant obeyed this instruction and was arrested shortly afterwards.

Appellant's entry into the house was through an unlocked kitchen door. In order to reach the kitchen door he came up some steps and through a screen door onto the rear porch. The screen door had no lock and was found wide open after appellant's arrest. There was evidence from the Howards, the only witnesses in the case, that the back screen door had been closed that night with the two bricks which were kept for that purpose.

Mr. Howard repaired the front screen that appellant had damaged in his attempted escape. To do so he simply pulled it tight and nailed it back down as before.

1. Appellant also disputes the trial court's refusal to give the jury a requested assault and battery instruction. This contention we find to be without merit. A requested jury instruction is properly refused in the absence of any evidence to support it. *Holt v. United States*, 340 A.2d 827, 828 (D.C.1975).

2. The evidence was sufficient to establish that appellant maliciously damaged the screen on the front porch; that the screen was the property of another; and that the screen served some useful, functional purpose. *Jenkins v. United States*, 374 A.2d 581, 586 n. 9 (D.C.), *cert. denied*, 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977); *Paige v. United States*, 183 A.2d 759 (D.C.1962). Its precise value is relevant only to the felony charge of destroying property "of the value of $200 or more." *See Nichols v. United States*, 343 A.2d 336, 341–43 (D.C.1975).

This screen had been bought at a sale for seventy-seven cents and had been up on the front porch for only a couple of weeks prior to the incident.

## II

The standard to be applied in reviewing the sufficiency of the evidence upon which a conviction is based is well known. "Where the evidence presented at trial is such that a reasonable person could find guilt beyond a reasonable doubt, a motion for judgment of acquittal should not be granted." *United States v. Hubbard*, 429 A.2d 1334, 1337 (D.C.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981). The evidence on such a claim must be evaluated in the light most favorable to the government, making allowance for the factfinder's right to determine the credibility of witnesses and draw justifiable inferences from their testimony. *Franey v. United States*, 382 A.2d 1019, 1022 (D.C. 1978). The fact that the case may rest on circumstantial evidence is of little consequence if that evidence is such that it may reasonably persuade the trier of fact beyond a reasonable doubt. *Chaconas v. United States*, 326 A.2d 792, 797 (D.C. 1974). It is only where there is no evidence upon which a reasonable mind could fairly conclude guilt beyond a reasonable doubt that a judgment of acquittal is properly granted. *Williams v. United States*, 357 A.2d 865, 867 (D.C.1976).

## III

We are asked to determine whether the evidence was sufficient to support the finding of specific criminal intent necessary to sustain appellant's conviction for attempted second-degree burglary. In more concrete terms, we must decide whether the evidence put before the jury permitted a reasonable mind to conclude beyond a reasonable doubt that appellant intended to steal, as alleged, when he entered 3004 Ninth Street, S.E.

 The significance of appellant's mental state can be most clearly seen when burglary is contrasted against the lesser offense of unlawful entry. A conviction for burglary requires a finding that the defendant entered the premises having already formed the intent to commit a criminal offense inside.[3] An attempted burglary, where only the act remains incomplete, demands an identical mental element. The offense of unlawful entry, on the other hand, is committed when a person invades property without lawful authority and against the will of the occupant.[4] On such a charge, as opposed to burglary, there need be no showing of intent to commit a particular crime inside. It is this additional element of requisite criminal intent, therefore, which generally distinguishes burglary from unlawful entry. *Roane v. United States*, 432 A.2d 1218, 1220 (D.C.1981). The gravity attached by the legislature to the additional mental element is reflected in the penalties which follow from a conviction. In the case of burglary, the maximum term of imprisonment is thirty years, sixty times the possible six-month period triggered by a conviction for unlawful entry.

3. D.C.Code § 22–1801 (1981) provides, in relevant part:

> Whoever shall ... break and enter, or enter without breaking [the property of another] with intent to break and carry away any part thereof, or any fixture or other thing attached to or connected thereto or to commit any criminal offense ...

shall be guilty of burglary, a felony. The distinction between first and second-degree burglary depends on whether the building is a dwelling and whether it is occupied at the time of entry.

4. D.C.Code § 22–3102 (1981) provides, in relevant part:

> Any person who, without lawful authority, shall enter, or attempt to enter [the property of another] against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof ...

shall be guilty of unlawful entry on property, a misdemeanor.

In reviewing a conviction for burglary, we have recognized that: "The requisite intent, of course, is a state of mind particular to the accused and unless such intent is admitted, it must be shown by circumstantial evidence." *Massey v. United States*, 320 A.2d 296, 299 (D.C.1974). We have further noted that unauthorized presence on another's property does not of itself establish the necessary intent to commit a crime upon the premises. *Id.* (quoting *United States v. Fox*, 140 U.S.App.D.C. 129, 131, 433 F.2d 1235, 1237 (1970)). In order to properly infer that the entry was with a specific criminal purpose, the jury must have before it evidence of "other circumstances" which would so indicate. *Id.* These other circumstances are those which might lead reasonable people, based upon their common experience, to conclude beyond a reasonable doubt that appellant intended to commit some crime upon the premises.[5] *Massey, supra*, 320 A.2d at 299.

The fact that appellant entered the premises without permission to do so cannot on its own constitute sufficient evidence of an intention to steal. *United States v. Melton*, 160 U.S.App.D.C. 252, 254, 491 F.2d 45, 47 (1974). The contrary position would require us to obliterate the clear distinction the legislature has drawn between burglary, a felony punishable by up to thirty years imprisonment, and unlawful entry, a misdemeanor which carries a maximum penalty of six months and a $100 fine. This court has no power to tamper with unambiguous legislative classifications such as these.[6] Other circumstances probative of criminal intent are required.

A careful review of the record before us reveals no such other circumstances in this case. Excluding appellant's unauthorized presence in the house, which standing alone warrants only a conviction for the lesser offense of unlawful entry, nothing indicates that he entered with the intention to steal. The Howards specifically denied seeing appellant with anything in his hands, nor did they see him touch anything. None of the contents of the house were missing. Appellant did open two unlocked doors, but there were no signs of forcible entry. No stolen property, burglary tools, weapons or other incriminating objects were found in appellant's possession at the time of his arrest. The house was well lit throughout and there were no signs of stealth or concealment attributed to the intruder. There was no violent behavior on appellant's part when discovered and the resulting physical contact was entirely initiated by Mr. Howard. Not until appellant broke free from captivity in the hands of his much larger opponent was there evidence of flight. In short, indications that appellant had made up his mind to steal at any time were conspicuously absent. By allowing the attempted second-degree bur-

---

5. *See, e.g., Massey, supra*, 320 A.2d 296 (forcible entry, darkened building, concealment, property packed into boxes inside building). *See also Hawthorne v. United States*, 476 A.2d 164 (D.C. 1984) (prior knowledge of value of victim's property, possession of stolen goods); *Byrd v. United States*, 388 A.2d 1225 (D.C.1978) (same); *Johnson v. United States*, 293 A.2d 269 (D.C. 1972) (flight, concealment, possession of burglary tools); *Franklin v. United States*, 293 A.2d 278 (D.C.1972) (disguised as store personnel, carrying bags commonly used by professional shoplifters); *United States v. Kearney*, 162 U.S.App. D.C. 110, 498 F.2d 61 (1974) (disguised as woman, entry upon pretext, carrying concealed firearms, apparently planned robbery, flight); *Washington v. United States*, 105 U.S.App.D.C. 58, 263 F.2d 742 (1959) (forcible entry, darkened building, stealth, flight).

6. In *Melton, supra*, 160 U.S.App.D.C. at 254, 491 F.2d at 47, the United States Court of Appeals for the District of Columbia Circuit held, as we do here, that evidence of unlawful entry does not, without more, constitute evidence sufficient to support a conviction for burglary. We are aware that some, though not all, of our dicta in *Massey, supra*, 320 A.2d at 300, may have given a conflicting impression. In that decision, although criticizing *Melton*, we acknowledged that the facts of the two cases were not on all fours and that our observations were therefore unnecessary to the resolution of *Massey*. The presence of other circumstances evidencing an intent to steal (*see* note 5, *supra* ) similarly distinguishes *Massey* from the record before us now, where there are none.

glary charge to survive the motion for judgment of acquittal, the trial court invited the jury to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation.

### IV

■ In order to reach its guilty verdict on the attempted second-degree burglary charge, the jury must necessarily have found appellant guilty of unlawful entry.[7] If it did not do so, given the absence of any other circumstances evidencing an intent to steal at the time of entry, the verdict would have been completely irrational. Accordingly, we vacate the judgment and sentence for attempted second-degree burglary, and we remand for entry of a judgment of conviction for unlawful entry and resentencing on this lesser-included offense.[8] We affirm appellant's conviction for malicious destruction of property.

*So ordered.*

---

7. It is conceivable that one might be guilty of burglary and yet not be guilty of unlawful entry. *United States v. Kearney, supra,* 162 U.S.App. D.C. at 113–14, 498 F.2d at 64–65. This situation does not arise in the present case, because the Howards did not consent to appellant's entry.

8. Unlawful entry on property, as defined by § 22–3102, contemplates both the completed act and an attempt.