**Arrick A. NORTH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 86–424.**

District of Columbia Court of Appeals.

Submitted July 6, 1987.

Decided Sept. 11, 1987.

Paul J. Riley, Washington, D.C., appointed by the court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Robert L. Bredhoff, and Elizabeth Trosman, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK and NEWMAN, Associate Judges, and GALLAGHER, Senior Judge.

NEWMAN, Associate Judge:

On this appeal, we must determine whether the evidence at trial was sufficient to sustain North's conviction for burglary. We conclude that it was not; we reverse.

The evidence in the light most favorable to the government is set forth in its brief as follows, with transcript references and a footnote deleted:

Izetta Carpenter testified that on February 21, 1984, she lived alone at 4229 Nash Street, Southeast, in the District of Columbia. On that date, Carpenter was on sick leave from her job and had returned home from a visit to her doctor at approximately 4:00 p.m. She then went into her living room to watch television. Sometime after 4:40 p.m., Carpenter heard the cracking of glass in the basement and then heard voices in her basement. She immediately locked the door that led from the basement to the main part of her house and ran to the home of a next door neighbor to call the police. The basement of Carpenter's house had two windows and a door, all of which faced the back of the house, and were locked and intact on that day. The back basement door was at the bottom of a stairway located at the rear of the house, and the windows were located at the top and bottom of the stairway.

Carpenter arrived at the home of Louise Lockhart, her next door neighbor, and called the police. Lockhart's son Christopher Powell and his friend Damon Settles were in the house when Carpenter arrived. Carpenter told the boys what had happened and while waiting for the police to arrive, Carpenter and Damon Settles looked out the back window of the Lockhart house to see if anyone would come out of Carpenter's basement.

The window offered a view of all of Carpenter's backyard and a couple of steps down the stairway leading to her basement. As they were watching, two men emerged from the basement steps, walked across the backyard and up the alley to the street where they turned to the left. Carpenter and Settles recognized one of the men who emerged from the basement as a neighbor called James, and the other as appellant whom Carpenter had seen from time to time in the neighborhood. Both witnesses testified that James was wearing a green jacket and green pants and that appellant was wearing a blue jacket and pants. Both Carpenter and Settles moved to the window in the front of the Lockhart house and observed the men enter a house across the street which Carpenter knew was James' house.

Karen Ashton testified that on February 21, 1984, sometime around 4:30 or 4:45, she observed James Lewis, whom she knew as a neighbor, and appellant walk together into Carpenter's backyard. At that time Ashton was washing her car in the back of her house which faced Carpenter's backyard. She then saw James Lewis go down the basement steps for a few minutes while appellant stood in the alley looking around. When Lewis emerged from the basement stairway, Ashton saw both men speak for a moment and then go down the basement steps. After approximately five minutes she saw both men reappear from the basement stairwell and walk across Carpenter's backyard, up the alleyway to the street where they turned left. Ashton testified that James Lewis was wearing a green outfit and that appellant wore a blue jacket.

Officer Herman Johnson of the Metropolitan Police Department testified that on February 21, 1984, at about 4:50 p.m. he and his partner responded to a radio call to 4229 Nash Street, Southeast. They were met by Izetta Carpenter who told them that the two men who had broken into her basement had entered 4242 Nash Street. The officers entered that address and found James Lewis and appellant inside. James Lewis was wearing green clothing and appellant was wearing a blue jacket. Both men were brought outside the house and were positively identified by Izetta Carpenter, Damon Settles and Karen Ashton as the men they had seen emerge from Carpenter's basement. Lewis and appellant were then placed under arrest. Lamont Allen, a Crime Scene Search Officer, testified that while investigating the scene he observed a torn screen and a missing window pane in a rear basement window and found broken glass on the inside of the basement. Carpenter also described the damage attributable to this offense.

The defense presented no evidence.

 When we review the sufficiency of the evidence, we must view the evidence in the light most favorable to the government, *Murchison v. United States*, 486 A.2d 77, 81 (D.C.1984), indulging all reasonable inferences in the government's favor. *Blackledge v. United States*, 447 A.2d 46, 49 (D.C.1982). To sustain this conviction for burglary, the government must prove a wrongful entry on the premises with the specific intent to steal. *See United States v. Sinclair*, 144 U.S.App.D.C. 13, 15 n. 5, 444 F.2d 888, 890 n. 5 (1971). "The requisite intent, of course, is a state of mind particular to the accused and unless such intent is admitted, it must be shown by circumstantial evidence." *Massey v. United States*, 320 A.2d 296, 299 (D.C.1974).

 We reject North's contention that the evidence was insufficient to establish an entry. The totality of the evidence, and particularly the testimony of Ms. Carpenter, was sufficient to permit a reasonable juror acting reasonably to find an unlawful entry. We do agree with North, however, that the evidence was insufficient to support a finding of the second element—specific intent to steal. The government argues that where the evidence shows (1) surreptitious behavior coupled with (2) an *unexplained*, forced entry into a neighbor's house, and (3) that there was no particular piece of property in the basement both small and valuable enough to steal, the jury may properly convict of burglary.

Put another way, the government asks, if the perpetrators did not unlawfully enter with the intent to steal, why were they there? Suffice it to say, the *government* has the burden of proving the specific intent to steal alleged in the indictment. *Shelton v. United States,* 505 A.2d 767, 769–71 (D.C.1986). Giving the government the benefit of all the evidence, including all reasonable inferences therefrom, the evidence in this record is legally insufficient. *Id. See Massey, supra,* 320 A.2d at 299.

*Reversed.*[*]

---

[*] In light of the sufficiency of the evidence to sustain a conviction of unlawful entry, on remand, the trial court should enter a judgment of guilty on that offense and resentence North accordingly. *See Shelton, supra,* 505 A.2d at 771.