**UNITED STATES of America**

v.

**Earl COOK, Appellant.**

**No. 71–1173.**

United States Court of Appeals, District of Columbia Circuit.

April 3, 1972.

———◆———

Mr. Richard Whitlock, Washington, D. C. (appointed by this court) was on the brief for appellant.

Messrs. Thomas A. Flannery, U. S. Atty., at the time the brief was filed, and John A. Terry and Percy H. Russell, Jr., Asst. U. S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, and ROBINSON and ROBB, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant was convicted by a jury on each of two counts of violation of the District of Columbia Code. One charged appellant with an assault on Willie Pelzer with a dangerous weapon, an offense punishable by Section 22–502.[1] The other charged him with mayhem on Pelzer and maliciously disfiguring him, a crime for which Section 22–506 sets the penalty.[2] The Government's evidence showed that appellant threw lye on Pelzer, burning his eyes and other parts of his body. The jury, under instructions not here in issue, rejected appellant's claim that he acted in self-defense. The trial judge imposed concurrent sentences of imprisonment, each within its statutory maximum.[3]

The conviction under Section 22–502 is not seriously challenged, nor hardly can it successfully be. We have long been wedded to the view that lye-throwing may constitute an assault with a dangerous weapon,[4] and the evidence here was more than ample to sustain the jury's verdict that appellant unjustifiably had done just that. The main contention on appeal is that the evidence was legally insufficient to sustain a conviction under Section 22–506. In support of that position, appellant urges that his act did not totally destroy Pelzer's eyesight and that no permanent injury was caused. In our view of the facts of record and the applicable law, neither of these arguments can prevail.

To be sure, mayhem in the early common law was committable only by infliction of an injury which substantially reduced the victim's formidability in combat. As a crime jeopardizing the King's prerogative to the aid and assistance of its subjects in battle,[5] mayhem directed its focus toward physical disablement rather than comeliness or completeness in bodily functioning. By Blackstone's classic definition, the offense was "the violently depriving another of the use of such of his members as may render him the less able in fighting, either to defend himself, or to annoy his adversary."[6] Thus mayhem included "the cutting off, or disabling, or weakening a man's hand or finger, or striking out his eye or foretooth, or depriving him of those parts the loss of which in all animals abates their courage."[7] On the other hand, "the loss of one of the jaw teeth, the ear, or the nose, is no mayhem at common law,

1. "Every person convicted of an assault with intent to commit mayhem, or of an assault with a dangerous weapon, shall be sentenced to imprisonment for not more than ten years." D.C.Code § 22–502 (1967).

2. "Every person convicted of mayhem or of maliciously disfiguring another shall be imprisoned for not more than ten years." D.C.Code § 22–506 (1967).

3. The sentence on each count was imprisonment for 30 to 90 months, to run concurrently.

4. Tatum v. United States, 71 U.S.App.D.C. 393, 110 F.2d 555 (1940). See also Bishop v. United States, 121 U.S.App.D.C. 243, 244, 349 F.2d 220, 221 (1965).

5. See 4 Blackstone, Commentaries 205; 1 Coke, Institutes 127.

6. 4 Blackstone, Commentaries 205. See to the same effect, 2 Coke on Littleton 288a; 1 East, Pleas of the Crown 393.

7. 4 Blackstone, Commentaries 205. See also 2 Coke on Littleton 288a; 1 East, Pleas of the Crown 393; 1 Hawkins, Pleas of the Crown 175.

as they can be of no use in fighting." [8] In sum, "if the injury be such as disfigures him only, without diminishing his corporeal abilities, it does not fall within the crime of mayhem." [9]

That body of ancient doctrine can hardly afford reliable guidance in the interpretation of a statute promulgated in an age and milieu in which individual and social values are vastly different. Indeed, at an early period English criminal law in mayhem-related fields underwent gradual expansion in consequence of a series of statutes.[10] By 1670, the best remembered—the Coventry Act [11]—embraced particular malicious acts which disfigured one's body without necessarily decreasing his pugilistic might. That trend has influenced much of the widespread legislation on mayhem-type crimes now found in the United States.[12]

What, then, originated as the narrow common law offense of mayhem is generally today a statutory offense of considerably larger dimensions. The transition has been accompanied, if not induced, by a shift in emphasis from the military and combative effects of the injury to the preservation of the human body in normal functioning.[13] The statutory counterparts of nonstatutory mayhem doubtless include all that the common law proscribed.[14] But what is important now is not the victim's capacity for attack or defense, but the integrity of his person.[15]

So, too, we think manifestly, is the character of Section 22–506. It prohibits not only "mayhem" but also—and much more broadly—"maliciously disfiguring another." [16] We take it that the offense under that section, like common law mayhem, requires permanence of injury or disfigurement in some appreciable form.[17] But Pelzer, appellant's victim, spent six days in a hospital after the offensive incident and underwent post-hospitalization treatment over a period of about a month. When, eight months after the incident, the case reached trial, Pelzer's vision in one eye ranged from "pretty good" downward to the point that at times he could see nothing at all. He also continued to bear scars on his face, neck and shoulders from the burns generated by the lye. The trial judge instructed the jury that appellant could be found guilty on the Section 22–506 count only in the event the evidence demonstrated beyond a reasonable doubt that he had sustained permanent injury. The verdict, then, implicitly incorporated such a finding and the evidence, in our view, adequately underpinned it.

Not even at common law did the injury mayhem required need to be

8. 3 Blackstone, Commentaries 121. See also 1 East, Pleas of the Crown 393; 1 Hawkins, Pleas of the Crown 175.

9. 1 East, Pleas of the Crown 393.

10. 5 Hen. IV, c. 5 (1403); 37 Hen. VIII, c. 6 (1545); Coventry Act, 22 & 23 Car. II, c. 1 (1670).

11. Cited *supra* note 10.

12. See cases collected in Annots., 16 A.L.R. 955 (1922), 58 A.L.R. 1320 (1929).

13. See Green v. State, 151 Ala. 14, 44 So. 194 (1907); State v. Foster, 156 La. 891, 101 So. 255, 257 (1924); State v. Raulie, 40 N.Mex. 318, 59 P.2d 359, 360 (1936);

Key v. State, 71 Tex.Cr.R. 642, 161 S.W. 121, 122 (1913).

14. See Brown v. United States, 84 U.S. App.D.C. 222, 223, 171 F.2d 832, 833 (1948); 1 F.Wharton, Criminal Law and Procedure § 369 at 730 (Anderson ed. 1957).

15. See cases cited *supra* note 13.

16. See note 2, *supra*.

17. See Pierce v. State, 220 Ind. 225, 41 N.E.2d 797, 798 (1942); State v. Foster, *supra* note 13, 101 So. at 257; State v. Raulie, *supra* note 13, 59 P.2d at 360; Lee v. Commonwealth, 135 Va. 572, 115 S.E. 671, 673 (1923).

completely destructive of one of the human senses.[18] Still less is the need under the statute. For whatever "mayhem" in Section 22–506 may be thought to cover,[19] disfigurement is something else again. In laymen's language, to disfigure is "to make less complete, perfect, or beautiful in appearance or character," [20] and disfigurement, in law as in common acceptation, may well be something less than total and irreversible deterioration of a bodily organ.[21] We are unwilling to assume that Congress had less concern for a substantial and enduring diminution of eyesight than for loss of a front tooth,[22] which dental science can readily rectify.[23] In our view, Section 22–506 may be infringed not only by an injury which renders an organ or member wholly useless but also by damage which leaves its usefulness greatly impaired.[24] And it goes without saying that the cosmetic effects of scarring may be sufficiently severe to bring the case within the ambit of the disfigurement that section condemns.

 In the case at bar, the jury heard the evidence on the condition of Pelzer's eyes and his scars were exhibited to the jury. On the evidence, a determination that he was disfigured by appellant's wrongful act was well within the jury's province. The judgment of appellant's conviction is accordingly

Affirmed.

18. See text *supra* at notes 6–9.

19. See Brown, v. United States, *supra* note 14, 84 U.S.App.D.C. at 223 n. 14, 171 F. 2d at 833 n. 14.

20. Merriam-Webster New International Dictionary 649 (3d ed. 1964).

21. See cases collected in Annots., 16 A.L.R. 955 (1922), 58 A.L.R. 1320 (1929).

22. See text *supra* at note 7.

23. There have long been indications that the infliction of an injury forbidden by

a mayhem-type statute may constitute an offense notwithstanding the possibility that alleviation of the injury is medically possible. See, *e. g.*, Slattery v. State, 41 Tex. 619, 621 (1874).

24. Compare State v. McDonie, 89 W.Va. 185, 109 S.E. 710, 715 (1921). The language of our statute differs significantly from that of the statute involved in State v. Nunes, 47 Cal.App. 346, 190 P. 486, 487, 488 (1920), where the offense was in relevant part defined in terms of "put[ting] out an eye." *Cf.* State v. Holmes, 20 Del. (4 Penne.) 196, 55 A. 343 (Ct.Gen.Sess.1903).