**Kathy C. FOREMAN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–1556.

District of Columbia Court of Appeals.

Submitted March 4, 1986.

Decided March 27, 1986.

Peter Hekman-Lielbriedis, Washington, D.C., appointed by this court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Raymond C. Hurley, and Wyneva Johnson, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN and TERRY, Associate Judges, and PAIR, Senior Judge.

TERRY, Associate Judge:

Appellant was convicted of malicious disfigurement while armed, in violation of D.C.Code §§ 22–506 (1981) and 22–3202 (1985 Supp.). Her only contention on appeal is that the evidence was insufficient to establish her guilt. We affirm the conviction.

**I**

One day in July 1983, Randall Reynolds stopped by appellant's house, where she lived with her mother. Reynolds had known appellant for over eleven years and was the father of her daughter. Although they had been "sort of separated" for some time, they remained "more or less friends."

On this occasion Reynolds asked appellant's mother to lend him some money, as she had often done in the past, but this time she refused. Appellant then reminded Reynolds that he still owed her money for some fireworks she had purchased, at his request, for their daughter's Fourth of July pleasure. Appellant also demanded that Reynolds take her to the store. Reynolds obliged, and the two of them drove to a nearby supermarket, then to a fried chicken restaurant and a liquor store. When they returned to the house, appellant accused Reynolds of stealing one of her bags of groceries. He denied this, but agreed to search his car for the missing bag. As he did so, he and appellant became embroiled in a heated argument. Appellant accused Reynolds of stealing her children's food and continued to insist on payment of the money he owed.

When Reynolds did not find the grocery bag, he decided to leave. As he headed for his car, he and appellant were still arguing, with appellant shouting obscenities at him. Reynolds heard appellant say, "I ought to throw this lye on you," referring to a jar containing a caustic liquid that she was going to use to unclog her mother's sink,[1] but he ignored her. Then, as he opened the car door, he heard someone shout, "Look out, Randall!" As he turned to look, he saw appellant throw the liquid at him.[2] It splashed all over his face and upper body. Reynolds immediately fell to the ground, his face feeling as if it were "on fire." In intense pain and unable to see, he started pulling grass out of the ground and cried repeatedly, "Why did she do that?" Reynolds' brother, Gary, testified that in the

ambulance on the way to the hospital Reynolds' "skin started boiling inside all over.... His hair was just falling out of his head, like he was just soaked in it, and his eyes, they swelled up, and all of a sudden he started bleeding out of the mouth ... and his whole face started turning pink on one side...."

Reynolds was taken to the MedStar Unit at the Washington Hospital Center. Dr. Sheryl Gabram, who treated him there, testified that he suffered second- and third-degree burns on eight percent of his total body surface area. Reynolds remained in the hospital for almost three weeks, during which time he underwent three operations, including a skin graft, in which skin was taken from his right thigh and behind his ears and used to cover his eyelids, face, and chest.

About three weeks after he was discharged from the hospital, Reynolds began seeing a plastic surgeon. By the time of appellant's trial nine months later, he had had eight or nine operations. Further skin grafts were performed, this time with skin from his neck and above his ears, which the doctors used to cushion his eye muscles. This was done to provide support for Reynolds' eyes, because he had been having difficulty seeing properly, and his eyes were constantly crossing. Reynolds testified that he expected additional surgery would be performed after the trial.

The jury, of course, was able to observe Reynolds, who wore a bandage on his eye at trial to prevent infection. While on the witness stand, Reynolds was instructed to unbutton his shirt and display his chest to

---

1. The liquid was not precisely identified, but appellant later testified that it was "something like Drano."

2. Appellant testified that the liquid splattered in Reynolds' face after he grabbed her and hit her in the eye. The jury, however, obviously rejected her testimony when it found her guilty. Because this appeal challenges the sufficiency of the evidence, we must view the evidence in the light most favorable to the government. E.g.,

*McClain v. United States,* 460 A.2d 562, 567 (D.C.1983); *Crawford v. United States,* 126 U.S. App.D.C. 156, 375 F.2d 332 (1967); *Curley v. United States,* 81 U.S.App.D.C. 389, 160 F.2d 229, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). This means that we may not consider appellant's version of the incident insofar as it conflicts with Reynolds' version.

the jury, which he did. Dr. Gabram testified that she had seen Reynolds on the day of trial, eleven months after treating him, and found that "[h]e still has some scarring on his forehead and cheeks. His lips are scarred. He also has some contractions, especially of his left eye."

## II

Appellant's only claim of error is that the government failed to present sufficient evidence to permit the case to go to the jury. In particular, she contends that because the government offered no evidence of Reynolds' appearance or physical condition prior to his injury, it failed to prove that he was permanently disfigured, one of the essential elements of the offense of malicious disfigurement.[3] The argument is frivolous.

In *Perkins v. United States*, 446 A.2d 19 (D.C.1982), this court held that permanent disfigurement "means that the person is appreciably less attractive or that a part of his body is to some appreciable degree less useful or functional than it was before the injury." *Id.* at 26. Appellant maintains in her brief that without proof of Reynolds' pre-injury appearance or condition, the government cannot prove disfigurement:

> It is entirely reasonable that the complainant had some extreme features, such as scars, tattoos, or other markings, which are no longer apparent because of the injuries he received as a result of the incident. In other words, it is reasonable, although maybe unlikely, that the complainant may be no worse looking to some reasonable juror were his pre-incident condition and appearance in evidence.

This argument defies common sense. Reynolds spent three weeks in the hospital

after appellant threw caustic liquid in his face and continued to undergo treatment for at least ten additional months. By the time of trial, he had had eight or nine operations, continued to wear bandages, and bore scars on his forehead, cheeks, and lips. The jurors saw Reynolds' face as he sat on the witness stand and told what had happened to him. They also saw his chest when he removed his shirt to show them his injuries. They heard Dr. Gabram discuss the treatment Reynolds had received after the incident, and she too testified about his scars. Furthermore, the court instructed the jury that it must find beyond a reasonable doubt that Reynolds was permanently disfigured in order to render a verdict of guilty.

It was perfectly reasonable, therefore, for the jury to find that Reynolds had become "appreciably less attractive"[4] as a result of appellant's actions. In our society a scar, by its very nature, does not make a person more attractive. Moreover, since Reynolds continued to bear multiple scars on his face and body almost eleven months after the offensive incident, despite extensive medical treatment, the jury could reasonably infer that his disfigurement was permanent.

This case is on all fours with *United States v. Cook*, 149 U.S.App.D.C. 197, 462 F.2d 301 (1972). Although *Cook* is not binding on us under *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971), we accepted its definition of malicious disfigurement in *Perkins*, *supra*, 446 A.2d at 25–26, and we now expressly approve and adopt its holding. In *Cook* the defendant threw lye on the complainant, which caused his vision to be impaired in one eye and scarred his face,

---

**3.** "The essential elements of the offense of malicious disfigurement, each of which the Government must prove beyond a reasonable doubt, are: (1) [t]hat the defendant inflicted an injury on the complaining witness, (2) [t]hat, as a result of the injury, the complaining witness was permanently disfigured, (3) [t]hat, at the time the defendant inflicted the injury, [she]

specifically intended to disfigure the complaining witness, (4) [t]hat, when [she] inflicted the injury, the defendant was acting with malice." *Perkins v. United States*, 446 A.2d 19, 26 (D.C. 1982).

**4.** *Perkins*, *supra*, 446 A.2d at 26.

neck, and shoulders. The court noted that the modern concept of disfigurement, as opposed to common law mayhem, concerns the "integrity of the person." 149 U.S. App.D.C. at 199, 462 F.2d at 303. "And it goes without saying that the cosmetic effects of scarring may be sufficiently severe to bring the case within the ambit of the disfigurement that section [22–506] condemns." *Id.* at 200, 462 F.2d at 304. Because the jury heard testimony concerning the condition of the complainant's eyes, and because his scars were exhibited to the jury, the court held in *Cook* that "a determination that he was disfigured by appellant's wrongful act was well within the jury's province." *Id.*

Here, as in *Cook*, the jury heard testimony about Reynolds' scars and other injuries, and it had an opportunity to observe those scars. Reynolds' eyes were bandaged and continued to suffer contractions, and the condition of his face and chest was visible to anyone who looked. The "cosmetic effects" of Reynolds' scars were thus sufficiently severe to permit the jury to draw the reasonable inference that he was permanently disfigured as a result of appellant's wrongful act. The fact that Reynolds was being treated by a plastic surgeon to mitigate the scarring and heal the damaged tissue is irrelevant. As the court said in *Cook*, "the infliction of an injury forbidden by a mayhem-type statute may constitute an offense notwithstanding the possibility that alleviation of the injury is medically possible." *Id.* at 200 n. 23, 462 F.2d at 304 n. 23.

Following *Cook*, we hold that there was ample evidence for the jury to find that Reynolds was permanently disfigured as a result of appellant's throwing the jar of drain cleaner in his face. Appellant's conviction of malicious disfigurement while armed is therefore

*Affirmed.*