Catherine CURTIS, Appellant,

v.

UNITED STATES, Appellee.

No. 85–712.

District of Columbia Court of Appeals.

Argued April 11, 1989.

Decided Jan. 17, 1990.

Roger C. Wesley, Washington, D.C., appointed by this court, for appellant.

Sharon M. Collins, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, Mary Ellen Abrecht, and Blanche Bruce, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, STEADMAN, Associate Judge, and REILLY, Senior Judge.

REILLY, Senior Judge:

As a sequel to the acrimonious breakup of a love affair, appellant, Catherine Curtis, was indicted, tried and convicted by a jury for commission of three offenses: (1) malicious disfigurement while armed (of her lover, Ash Rabbil), D.C.Code §§ 22–506, –3202 (1989 Repl.); (2) assault with a dangerous weapon, *id.*, § 22–502; and (3) malicious destruction of property, *id.*, § 22–403. The court imposed a prison sentence of five to fifteen years on the disfigurement count, and shorter terms of imprisonment on the other two—all sentences to be served concurrently. Appellant assigns as error the refusal of the court to grant a motion for acquittal on the disfigurement count grounded on asserted lack of evidence of specific intent, and also argues that the conviction of assault with a dangerous weapon, being a lesser-included offense of armed disfigurement, merged with the latter and should be vacated. The conviction on property destruction is not challenged.

In our opinion, the court committed no error in denying the motion for acquittal on the disfigurement count and thereafter rejecting a post-sentence motion to set aside the conviction on this charge. We agree with appellant's contention on the merger issue, however, and remand the case to the trial court for vacation of the conviction and sentence for assault with a dangerous weapon.

When any trial ruling denying acquittal is assailed on the ground of insufficient supporting evidence, it is fundamental that we review the testimony in the light most favorable to the government, *Byrd v. United States*, 388 A.2d 1225, 1229 (D.C.1978); *Glascoe v. United States*, 514 A.2d 455, 457 (D.C.1986), and overturn a conviction

only if there is no evidence from which a jury could find guilt beyond a reasonable doubt. *Stack v. United States*, 519 A.2d 147, 159–60 (D.C.1986).

In this case, the testimony presented by the government may be summarized briefly as follows.

As a result of a social encounter at a night club, Miss Curtis and Rabbil became lovers. Soon thereafter he moved into her apartment, bringing with him a television set, clothing, and other items. Under their arrangements, Rabbil contributed to the household expenses, *e.g.*, buying the groceries, paying telephone bills, and promising to purchase some new bedroom furniture. After a few months, the relationship soured when Rabbil hinted that he was going to leave and live with a brother and she accused him of a liaison with another woman. This produced a series of quarrels culminating in her locking him out.

Being denied access to his belongings, Rabbil filed an official complaint, but eventually persuaded appellant to grant him entry to the apartment one night, where he obtained her permission to call a male friend to assist him in moving his things out. When the latter arrived, he helped Rabbil pack his clothes and other articles and carry them down to his car, parked three floors below. The men also pushed the television set from the apartment to a stairway landing outside. Appellant shut the door, but suddenly emerged with a frying pan, and smashed both sides of the television set. Rabbil protested, but his friend persuaded him to let the matter go and finish loading the car.

As Rabbil was descending with a bag of clothes and had reached a landing between floors, appellant again left her apartment, brandishing a bottle of draining fluid, and hurled its contents down in his direction, dousing him on the neck and soaking his shirt. His skin started to burn. Rabbil screamed. His friend assisted him to the sidewalk, ripped off his shirt which was disintegrating, and tried to clean off the liquid. The men then became aware that appellant was at her front window watching them and grinning. When the friend shouted that Rabbil was "burning up," she retorted: "Well, did you think that I would let him walk out of my life just like that."

About fifteen minutes later, police arrived, and dispatched Rabbil in an ambulance to a hospital, where he was treated over a period of a fortnight for third-degree burns on ten percent of his body, requiring skin grafts. His neck and shoulder were permanently scarred, as the government demonstrated at trial.

■ The section of the code which the first count of the indictment accused appellant of violating reads: "Every person convicted of mayhem or maliciously disfiguring another shall be imprisoned for not more than 10 years." D.C.Code § 22–506. While it has been held that in a prosecution for mayhem a showing of specific intent is not essential, *Brown v. United States*, 84 U.S.App.D.C. 222, 171 F.2d 832 (1948), appellant points out—and the government concedes—that specific intent is an essential element of the crime of malicious disfigurement. *Perkins v. United States*, 446 A.2d 19, 24–25 (D.C.1982).

In contending that there was no evidence of specific intent here, appellant dwells on the fact that the government never attached a name to the fluid which was thrown at the complainant, failed to introduce the container or its label at trial, and offered no evidence with respect to the chemical ingredients in the liquid. Accordingly, counsel argues that absent evidence that appellant was aware that the particular fluid would cause harmful burns to human skin, proof of specific intent to disfigure the person at whom it was thrown was fatally lacking. We are urged to distinguish this case from *Foreman v. United States*, 506 A.2d 1124 (D.C.1986), and *United States v. Cook*, 149 U.S.App.D.C. 197, 462 F.2d 301 (1972), where the disfiguring liquid was identified as lye—a caustic substance.

There is other evidence in the instant case, however, from which a jury could infer a deliberate intent to disfigure. Minutes had elapsed between the moment appellant closed her door after bashing the television cabinet and the time she reappeared with the bottle of draining fluid.

Thus she had an opportunity to select from her kitchen, where such items as juice, soft drinks, cans of soup would ordinarily be located, the one liquid likely to be most dangerous if poured upon a human being. She testified that although she had not read the label on the container, it was something provided her by apartment maintenance to unclog drains. Hence, she must have been aware that any chemical powerful enough to dissolve matter solid enough to block a drain was bound to have a deleterious effect upon exposed skin areas. Moreover, when she was later told that Rabbil was suffering painful burns, far from expressing surprise, her quoted comment, *supra*, indicates that this was precisely what she meant to accomplish when she threw the fluid at him. In short, the record discloses ample evidence of specific intent to scar her lover permanently when he decided to leave her.

We turn now to the issue of merger. The Double Jeopardy Clause of the Constitution prohibits a court from imposing more than one punishment for a single offense, but multiple punishments for acts constituting a violation of more than one statute are not barred even though based on one transaction, if the legislature intended to authorize imposition of separate penalties for distinctively different statutory offenses. *Wilson v. United States*, 528 A.2d 876, 879 (D.C.1987). The classic test is that two offenses are distinct for the purpose of imposing multiple punishments if each requires "proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

In the case before us, it does appear that the elements of the two major offenses charged in the indictment are not identical. Even an armed man could inflict disfigurement without the use of any weapon, *e.g.*, by breaking the victim's nose with a punch or kick, pushing his face against barbed wire or a hot stove. Hence, it could be argued that conviction for assault with a dangerous weapon should be allowed to *stand* because it required proof of a different fact.

Recent holdings involving a lesser-included offense, however, emphasize that it is not enough to consider elements of different crimes in the abstract, but rather to focus upon the evidentiary context in the particular case. *Arnold v. United States*, 467 A.2d 136, 139 (D.C.1983). In this one, the conviction of disfigurement rested upon evidence that the accused actually used the dangerous weapon with which she was armed, *viz.*, the caustic liquid, to inflict scars of a permanent nature. The evidence which supported the guilty verdict on the assault with a dangerous weapon count was a component of the proof of the greater offense of disfigurement. Hence, to permit both convictions to stand would offend the Double Jeopardy Clause. In *Wynn v. United States*, 538 A.2d 1139, 1145–46 (D.C.1988), we held that in a trial for mayhem while armed, it was proper·to instruct the jury that assault with a dangerous weapon was a lesser-included offense, where the evidence to support the principal crime charged showed use of the same weapon in its commission.

Accordingly, we hold that the conviction for assault with a dangerous weapon must be set aside, and remand the case to the trial court for vacation of the conviction and sentence on this count. On the other counts, the convictions are affirmed.

*Reversed in part, affirmed in part, and remanded.*