**Gerald McKINNON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 91–CF–792, 92–CO–883.**

District of Columbia Court of Appeals.

Argued Oct. 7, 1993.

Decided July 7, 1994.

---

Michael P. Colucci, appointed by this court, filed a brief, for appellant in No. 91–CF–792.

Jennifer M. Anderson, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Mark J. Carroll, Asst. U.S. Attys., filed a brief, for appellee in No. 91–CF–792.

William S. Rhyne, appointed by this court, for appellant in No. 92–CO–883.

John R. Fisher, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and Mark J. Carroll, Asst. U.S. Atty., were on the brief, for appellee in No. 92–CO–883.

Before FERREN and SCHWELB, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

At the conclusion of a two-day trial, a jury convicted appellant, Gerald McKinnon, of first-degree burglary while armed,[1] assault with intent to kill while armed,[2] mayhem while armed,[3] and carrying a dangerous weapon.[4] Subsequent to sentencing, appellant filed a timely direct appeal, arguing principally that the evidence was insufficient to sustain the burglary and mayhem convictions. He later made a collateral attack on his convictions as well, filing a motion for new trial pursuant to D.C.Code § 23–110 (1989 Repl.), in which he asserted ineffective assistance of counsel. The trial court denied the § 23–110 motion.[5] We consolidated appellant's appeal from denial of the motion with his direct appeal. We find no merit in either appeal, and therefore affirm.

### I.

Evidence produced at trial showed that appellant arrived unexpectedly at the apartment of his former girlfriend, complainant Denise Smith, the morning of August 19, 1990. Although Smith was "shocked" to see him, she admitted him to her apartment. Smith's friend, Blanche Farrish, was inside Smith's apartment at the time, but Farrish left shortly after appellant's arrival to locate a telephone in order to make some calls. After appellant and Smith had conversed for a short while, Smith stated that she was going to leave to meet Farrish outside. Appellant and Smith then left the apartment together.

Upon exiting the apartment building, appellant stated that he had left his cigarettes inside Smith's apartment. Refusing her offer to buy him a new pack, he insisted that she return to her apartment to retrieve them. He then followed her as she ascended the stairs to her apartment, entered the apartment with her, and immediately locked the door behind them.

Appellant then attempted to initiate a conversation about the couple's relationship. Smith was unreceptive. After a period of argument, the length of which was not clearly established at trial, appellant stated that neither of them had anything to live for. He drew out a ten to twelve inch butcher knife that he had concealed in his clothing and began to cut and stab Smith.

Farrish, who was standing outside the apartment building, heard Smith scream. Farrish attempted to gain entry to Smith's apartment but, because appellant had locked the door, could not. While the attack continued, Smith made her way to a window of her third-floor apartment and jumped out. This attempt to evade appellant was at first unsuccessful, as he jumped out after her, knife in hand.

A neighbor who heard the argument called the police and, while doing so, saw Smith and appellant land on the ground beneath her window and saw appellant's bloody knife. She shouted at appellant. At that point appellant abandoned the attack, wiped off the knife, and departed on foot.

In his defense, appellant presented two alibi witnesses who testified that he was elsewhere on the morning of the assault. The jury convicted appellant of the four offenses listed above.

### II.

█ On direct appeal appellant asserts: (1) the evidence was insufficient to establish

---

1. D.C.Code §§ 22–1801(a), –3202 (1989 Repl.).

2. *Id.* at §§ 22–501, –3202.

3. *Id.* at §§ 22–506, –3202.

4. *Id.* at § 22–3204(a).

5. In denying the motion, the trial court noted that appellant had not requested a hearing and that appellant's counsel had "telephonically communicated to the court that he believed a hearing would not be necessary."

the "intent" element necessary to sustain the burglary conviction; (2) the evidence was insufficient to establish the "permanent injury" element necessary to sustain the mayhem conviction; (3) the court committed plain error in failing to give a unanimity instruction; and (4) the jury possibly convicted him on an improper theory (a variation of the unanimity argument, as the allegedly improper prosecution theory is essentially that the first entry constituted a burglary). Only the first two of these four arguments warrant extended discussion here.[6]

### The Burglary Conviction

■ Appellant argues that the trial court committed reversible error when it denied his motion for judgment of acquittal on the basis of insufficiency of the evidence of the "intent" element of the burglary charge. The elements of burglary in the first degree are: (1) the entering of a dwelling, or room of another used as a sleeping apartment, while it is occupied by any person; (2) with intent to commit a criminal offense. *See* D.C.Code § 22–1801(a) (1989 Repl.); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.34 (4th ed. 1993). Appellant contends that on the basis of the evidence presented at trial, no reasonable juror could be convinced beyond a reasonable doubt that *at the time* he entered Smith's apartment he had the intent to commit assault.

■ In ruling on a motion for judgment of acquittal alleging insufficiency of evidence,

the trial court must review the evidence in the light most favorable to the government. *Curry v. United States*, 520 A.2d 255, 263 (D.C.1987). If a reasonable juror, evaluating that evidence and drawing permissible inferences therefrom without engaging in conjecture or speculation, *must* have some reasonable doubt as to the existence of any essential element, the motion should be granted. *Id.; McClain v. United States*, 460 A.2d 562, 567 (D.C.1983). This court "employs the same standard as that applied by the trial court in determining whether the evidence was sufficient to convict." *Curry, supra*, 520 A.2d at 263.

In *Johnson v. United States*, 613 A.2d 888 (D.C.1992) (per curiam), we stated that a jury may infer that the defendant possessed criminal intent at the time of entry when "unauthorized presence is aided by *other circumstances.*'" *See Johnson, supra*, 613 A.2d at 899 (quoting *Warrick v. United States*, 528 A.2d 438, 442 (D.C.1987)). We further explained that "[t]his court has purposely avoided narrowly defining these other circumstances as we prefer to consider in each case whether the circumstances are such as might lead reasonable people, based on their common experience, to conclude beyond a reasonable doubt that appellant intended to commit some crime upon the premises." *Johnson, supra*, 613 A.2d at 899–900 (internal quotations and citations omitted).

■ We note that *Johnson* and *Warrick,*

Shivers v. United States*, 533 A.2d 258, 263 (D.C. 1987)). Rather, appellant must show that the lack of a unanimity instruction jeopardized the fairness and integrity of his trial. *See Green, supra*, 544 A.2d at 715. In closing argument, the government clearly articulated its theory of the case by addressing the burglary charge only with reference to the second entry. Under these circumstances, appellant can make no showing of plain error.

For the same reason, we find no merit in appellant's argument that the jury may have convicted him on an improper theory.

Appellant also argues on direct appeal that the trial court committed plain error in giving without objection an "acquittal first" instruction in its initial charge to the jury. We find no plain error. *See Jones v. United States*, 544 A.2d 1250, 1254 (D.C.1988).

---

**6.** We need not address appellant's latter two arguments at length. As to unanimity, the government elicited testimony from its witnesses, and referred in argument to two separate occasions upon which appellant entered complainant's apartment on the morning of the assault. On this basis, appellant asserts that the trial court committed plain error in its failure *sua sponte* to give a unanimity instruction to the jury on the burglary while armed charge. Because appellant did not request the instruction at trial, we review this claim under the plain error standard. *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (*en banc*). In order to demonstrate plain error "[i]t is not enough to show ... that the evidence, relevant to a single count, reveals ... two or more incidents which might be sufficiently separate to warrant, if requested, a special unanimity instruction...." *Green v. United States*, 544 A.2d 714, 715 (D.C.1988) (quoting

like many of our precedents,[7] involved entries that were plainly unauthorized. In this case, Smith acquiesced in the entry during which she was assaulted, but her acquiescence was obtained by ruse, *i.e.*, appellant's insistence that they reenter Smith's apartment so that he could recover his pack of cigarettes. In our view, this arguable distinction has no bearing on the manner in which the finder of fact should determine intent. This would be so even if there had been an untainted consent to enter. It is well-established that "consent to enter is not a defense [to burglary] where one is shown to have entered with the requisite criminal intent." *United States v. Kearney,* 162 U.S.App.D.C. 110, 113, 498 F.2d 61, 64 (1974) (authorized entrant convicted of burglary based on inference of intent where circumstances included admission to premises upon a pretext, carrying of concealed weapons, and flight from the scene subsequent to commission of robbery); *see also Parker v. United States,* 449 A.2d 1076 (D.C.1982) (hotel workers authorized to enter guest rooms convicted of burglary where circumstances supported inference of intent to steal, at least upon entry of second hotel room in which larceny was committed). It is true, of course, that in the ultimate assessment of the sufficiency of the evidence, the nature of the entry may be a significant factor. But the manner of weighing other attendant circumstances to determine intent in cases involving authorized entries or entries obtained by ruse is not different from the manner of weighing them where entry is plainly unauthorized.

■ In this case, the trial court identified three other circumstances that support the inference that appellant possessed the intent to assault Smith when he entered her apartment for the second time. First, appellant locked the door behind him. Second, he carried a large butcher knife hidden in his clothing. Third, there was "no prolonged

discussion" after the second entry and prior to the attack. We add that appellant's use of a ruse or strategy to lure his victim back into her apartment is also a circumstance supporting a finding of intent.

■ Appellant attempts to ward off the inference of intent with factual and legal arguments.[8] Two of his legal contentions warrant our attention. First, relying on this court's decision in *Warrick,* appellant argues that possession of a weapon cannot furnish the basis for the inference that he possessed the intent to assault Smith at the time he entered her apartment the second time. *See Warrick, supra* note 7, 528 A.2d at 442. In *Warrick,* an unauthorized entrant who was armed with a knife was in the process of stealing a television set when he *unexpectedly* encountered a householder and assaulted him with the knife. This court reasoned that the only intent that could be inferred from that defendant's possession of a weapon was his intent to use it *if* he encountered resistance in the house. The court held that a conviction for burglary while armed *with intent to commit assault* could not be sustained on the basis of such a conditional intent; otherwise, the inference of intent to assault could be found in every instance in which a defendant was charged with burglary while armed. *Id.* at 442–43.

Appellant argues that his intent to assault was similarly conditioned upon the unpredictable flow of events subsequent to his entering Smith's apartment. This attempt to place himself within the *Warrick* framework fails. The crucial distinction is that here appellant entered Smith's house while armed *for the purpose of* having a confrontation with her. It is reasonably inferable from his words to Smith when he drew the knife that in the event Smith did not comply with his wishes he intended to kill her. Entering an occupied dwelling with such an intent is within the range of evils the burglary statute was intended to prevent.[9]

**7.** *See, e.g., Shelton v. United States,* 505 A.2d 767 (D.C.1986); *Massey v. United States,* 320 A.2d 296 (D.C.1974).

**8.** Regarding factual matters, for example, he states that it was reasonable to lock the door

given the rough character of the apartment complex. It was for the jury to weigh such facts.

**9.** The Model Penal Code states that "[w]hen a particular purpose is an element of an offense, the element is established although such purpose is conditional, unless the condition negatives the

Second, appellant challenges the evidentiary basis for the trial court's statement that there was no "prolonged discussion" prior to the attack. (This was one of the circumstances the trial court cited in denying appellant's motion for judgment of acquittal.) Although there is evidence that the assault was preceded by at least some conversation between appellant and Smith, it is not possible to determine precisely from the trial testimony the amount of time that passed from appellant's second entry into the apartment until the physical assault. While there was evidence presented at trial which could be construed to support the trial court's conclusion,[10] we need not decide whether that evidence supports the trial court's finding regarding the time that passed between entry and assault in order to uphold the court's view that there was sufficient evidence of intent. We hold that three "other" circumstances—the use of a ruse to coax Smith back to her apartment, locking the apartment door, and carrying a concealed weapon—provide more than sufficient basis for such an inference.

### The Mayhem Conviction and Denial of the § 23–110 Motion

Appellant makes two contentions with regard to his conviction for mayhem. First, on his direct appeal he argues that the trial court erred in denying his motion for judgment of acquittal on the mayhem conviction. In that motion he asserted that the government failed to prove the "permanent injury" element of mayhem. In its brief on direct appeal, the government responded that due to McKinnon's trial counsel's statement before closing argument that he would not contest the government's claim that the removal of sixteen inches of Smith's small intestine constituted permanent injury, appellant could not pursue this issue on appeal. Appellant thereupon filed a motion for new trial pursuant to D.C.Code § 23–110 (1989 Repl.), arguing that trial counsel afforded ineffective assistance of counsel when he made that agreement. The denial of that motion is on appeal here.

■ We agree with the government that the defense conceded at trial the issue whether the injury to Smith's intestines satisfied the permanent injury element of mayhem, and therefore cannot pursue that point on direct appeal here. See Byrd v. United States, 502 A.2d 451, 453 (D.C.1985). We therefore proceed directly to the appeal from the denial of the § 23–110 motion. In order to prevail on a claim of ineffective assistance of counsel, a movant "must show not only that trial counsel's performance was deficient under prevailing professional norms, but also that but for trial counsel's error there is a reasonable probability that the defendant would have been found not guilty." Smith v. United States, 608 A.2d 129, 131 n. 4 (D.C. 1992) (citing Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). The reviewing court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, supra, 466 U.S. at 697, 104 S.Ct. at 2069.

■ Appellant correctly asserts that permanent disabling injury is an element of mayhem. Edwards v. United States, 583 A.2d 661, 668 (D.C.1990). He goes on to argue that because no evidence was present-

harm or evil sought to be prevented by the law defining the offense." MODEL PENAL CODE § 2.02(6) (Proposed Official Draft 1962). (An example of a condition which negatives the presence of such an evil would be the taking of property in the possession of another, with the intent of returning it if it is found not to be the property of the person who took it. 1 WAYNE R. LAFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW, § 3.5(d) (1986)).

10. The close proximity in time between an attacker's entry into a premises and a subsequent assault was cited by the Johnson court as one factor supporting an inference of the defendant's intent upon entry. Johnson, supra note 7, 613 A.2d at 900.

To controvert the trial court's conclusion that there was no prolonged discussion prior to the attack in the instant case, appellant cites Smith's testimony that appellant had been in her apartment "about an hour" prior to the attack, as the "only estimate of time given by any witness." But appellant ignores the testimony of Smith's friend, Farrish, who was outside the building waiting for Smith at the time of the attack. She testified that when appellant and Smith returned to Smith's apartment to retrieve appellant's cigarettes, it was only a "short period" before she heard Smith begin to scream. It was within the province of the jury to credit Farrish's estimate of the amount of time that elapsed instead of Smith's.

ed as to whether the removal of part of Smith's small intestine permanently disabled the functioning of the organ, his attorney afforded ineffective assistance by conceding the point.

Appellant's basic defense at trial was alibi. His counsel's failure to argue that Smith's injury was not permanently disabling was inconsequential to the success or failure of that defense. We make this observation not to decide the prejudice prong of the *Strickland* test, but to state the basis for considering whether trial counsel's decision to concede the permanent injury element of mayhem can fairly be viewed as tactical. In that regard, the trial judge concluded that "defense counsel's tactical decision to circumvent questioning on gruesome injuries sustained from the stabbing in order to focus the juries' [sic] attention on the defense alibi theory was a logical decision. . . ." Under the circumstances of this case, we defer to the trial judge's finding that the alibi defense could well have been undermined by protracted and probably gory testimony as to whether Smith's abdominal stab wounds (which were described as life-threatening by her treating physician) resulted in permanent disability. Accordingly, we will not disturb his conclusion that defense counsel's decision was tactical. Because "[t]actical decisions which may go awry at trial do not constitute ineffectiveness," *Carter v. United States*, 475

A.2d 1118, 1123 (D.C.1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985), appellant has failed to satisfy the performance prong of *Strickland*.[11] Therefore, we need not consider whether McKinnon was prejudiced, in the *Strickland* sense, by his counsel's concession that there was sufficient evidence presented to sustain a finding that Smith's injury was permanently disabling.[12]

Accordingly, appellant's convictions and the trial court's denial of his § 23–110 motion are

*Affirmed.*

---

**11.** We distinguish our holding in *Gillis v. United States,* 586 A.2d 726, 728 (D.C.1991) (per curiam) that it was error to deny a § 23–110 motion without a hearing where trial defense counsel had given no explanation of his decision not to call as witnesses security guards who supposedly had defendant in custody at the very time he was accused of committing the charged offense at another location. In *Gillis,* the failure to call those exculpatory witnesses was objectively unreasonable and in the absence of a reasonable explanation suggested ineffective representation. Here, the rationale for the tactical choice was entirely apparent and readily perceived by the trial judge. We emphasize that by so stating, we do not signal any retreat from this court's long-standing position that hearings are normally required in order to explore whether there was a tactical basis for challenged conduct of trial defense counsel.

**12.** Specifically, we need not determine whether the evidence was sufficient to establish that the removal of a sixteen-inch portion of the complaining witness' small intestine was a permanent injury that substantially impaired the nor-

mal functioning of her body. In that regard, we note that in *United States v. Cook,* 149 U.S.App. D.C. 197, 462 F.2d 301 (1972), the D.C.Circuit stated that "[t]here have long been indications that the infliction of an injury forbidden by a mayhem-type statute may constitute an offense notwithstanding the possibility that alleviation of the injury is medically possible." *Id.* at 200 n. 23, 462 F.2d at 304 n. 23 (citation omitted). This portion of the *Cook* opinion was quoted by this court in *Perkins v. United States,* 446 A.2d 19, 26 (D.C.1982) (per curiam), a malicious disfigurement case. The crimes of mayhem and malicious disfigurement are codified together at D.C.Code § 22–506 and share the common requirement of "permanence" of injury. Thus, the *Perkins* court's conclusion (citing *Cook* ) that disfigurement can be considered permanent even if capable of being alleviated by medical intervention appears controlling on the issue of whether a *disability* that can be alleviated is sufficiently permanent for purposes of the statute. 446 A.2d at 25–26.