John **HARKINS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 00–CM–718, 01–CO–1069.

District of Columbia Court of Appeals.

Argued Oct. 8, 2002.
Decided Nov. 21, 2002.

Mary Manning Petras, Washington, DC, for appellant.

Denise M. Clark, Assistant United States Attorney, for appellee. Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and John P. Gidez, Assistant United States Attorneys, were on the brief for appellee.

Before WAGNER, Chief Judge, and TERRY and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

Following a bench trial, appellant, John Harkins, was convicted of misdemeanor sexual abuse and sentenced to thirty days sentence suspended, probation for one year, and fined $250. On appeal, Harkins alleges: (1) ineffective assistance of counsel, based primarily on the ground that his trial counsel failed to elicit the complaining witness's financial bias and (2) insufficient evidence to support his conviction. We affirm the trial court's rulings.

I.

On the morning of October 8, 1999, the complainant, Ms. Wesson, boarded a Metro train at the Deanwood Station on the Orange Line traveling to work. Ms. Wesson was sitting in the window seat reading a newspaper when the appellant, Harkins, boarded the train at the Eastern Market Station and sat in the seat next to her. After sitting down, Harkins and Ms. Wesson had a brief conversation, which included an exchange of names and places of employment.

According to the government's evidence, several events took place after Harkins sat down next to Ms. Wesson. While sitting next to Ms. Wesson, Harkins began to move closer to her and started rubbing his leg against hers, and then his hand against her thigh. Following this contact, Ms. Wesson decided to change seats and as she "brushed pas[t]" Harkins, she felt him

touch her buttock. Ms. Wesson responded, "No, you can't do that" and proceeded to change seats. After Ms. Wesson sat down in her new seat, again a window seat, Harkins moved beside her and attempted to engage Ms. Wesson in conversation. Ms. Wesson responded that she did not want to talk with Harkins and then changed seats a second time, this time sitting in an aisle seat. Harkins then moved to the seat directly across the aisle from Ms. Wesson's new seat. After Harkins sat down, he began "doing something with his pants." Ms. Wesson was "pretty sure" he had exposed himself, but was not absolutely certain. When the Metro train reached the McPherson Square Metro Station, Harkins got up, dropped his business card in Ms. Wesson's newspaper, and said, "Give me a call sometime, baby." Appellant disputes this account.

## II.

■ Harkins first argues that the trial court erred in denying his motion under D.C.Code § 23–110 (2001). Harkins contends that his trial counsel was ineffective when she failed to pursue a line of questioning during cross-examination of Ms. Wesson, which might have demonstrated financial bias. Harkins suggests that this was not simply "trial tactics," but rose to the level of ineffective assistance of counsel. In order for Harkins to prevail on a § 23–110 claim, however, he must prove "(1) deficient performance on the part of his trial counsel, *and* (2) prejudice as a result of that deficient performance." *Ready v. United States,* 620 A.2d 233, 234 (D.C.1993) (emphasis in original) (enunciating the *Strickland* test).

We first examine whether appellant's trial counsel's performance was deficient. "Judicial scrutiny of counsel's performance must be highly deferential," *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and to prevail, "the defendant must show that counsel's

representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. A review of the record reveals that trial counsel was not deficient. First, in her opening statement, trial counsel alluded to the possibility of a financial bias on the part of the complainant, by indicating that the complainant might be fabricating part of her story in order to strengthen her case for a civil suit. Appellant's trial counsel did not promise to produce evidence to show financial bias, but noted that it was one possible reason why criminal charges were brought against the appellant. Second, during cross examination of the complainant, trial counsel attempted to elicit the complainant's potential financial bias. Appellant's trial counsel asked a series of questions to develop a foundation for this argument. Specifically, complainant was asked whether she knew: (1) that appellant was an Executive Vice–President; (2) that appellant was an attorney; (3) that appellant had a law degree; and (4) that appellant might be wealthy. In response, complainant indicated that while she was aware of what appellant did for a living, she "didn't care" if he was wealthy. Complainant's responses effectively limited this defense theory. We cannot fault appellant's trial counsel for not continuing with this line of questioning in the hopes of eliciting a financial bias, especially since neither appellant nor his trial counsel knew that complainant had been contemplating a civil suit. Furthermore, the trial court, in both its ruling and subsequent order denying appellant's § 23–110 motion, acknowledged appellant's attempt to introduce bias evidence. This acknowledgment indicates that appellant's trial counsel successfully brought the issue before the court's attention. Based upon the foregoing discussion, the actions of trial counsel were "within the range of tactics defense counsel reasonably might employ." *Hall v. United States,* 559 A.2d 1321, 1322 (D.C.

1989). Thus, we have no reason to conclude that appellant's trial counsel's performance was deficient.

■ Even if we were to conclude that trial counsel's performance was deficient, appellant cannot satisfy the prejudice prong of *Strickland.* When analyzing the second prong of the *Strickland* test, we "must find that appellant has shown 'there is a reasonable probability that, but for counsel's unprofessional errors, the result [at trial] would have been different."' *Ready,* 620 A.2d at 234 (citation omitted and interpolation in original). Appellant, by analogizing this court's Sixth Amendment Confrontation Clause jurisprudence with the prejudice prong in *Strickland,* states that there was prejudice. Specifically, appellant contends that trial counsel's failure to elicit bias testimony is tantamount to a case where a trial court limits the cross-examination of a witness's bias. Therefore, appellant argues that just as we would find reversible error if a trial court limited cross-examination of bias, we should also find reversible error when a trial counsel fails to elicit bias testimony.[1] We disagree with appellant. The prejudice inquiry under the Confrontation Clause of the Sixth Amendment is not analogous to prejudice inquiry under *Strickland.*

■ Under the Sixth Amendment, "the focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the *particular witness, not on the outcome of the entire trial." Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (emphasis added). Thus, a criminal defendant would succeed on a Sixth Amendment challenge by demonstrating "that he was prohibited from engaging in otherwise appropriate cross-examination designed to show ... bias" "provided the government is unable to show harmless error beyond a reasonable doubt." *Id.* By contrast, under *Strickland,* the prejudice inquiry requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the *result of the proceeding would have been different." Strickland,* 466 U.S. at 698, 104 S.Ct. 2052 (emphasis added) (citations omitted). Under *Strickland,* the focus is on the outcome of the trial, not the individual error. Thus, the failure to elicit bias testimony from a witness is not, in and of itself, prejudice under *Strickland;* rather, appellant must show that the error prejudiced the outcome. Harkins must demonstrate that there was a reasonable probability that the failure of trial counsel to elicit bias testimony undermined the outcome of the case. This appellant has failed to do. Further, the trial judge acknowledged his awareness of the potential financial bias in both his ruling and subsequent order denying a hearing on the § 23–110 motion. This acknowledgment demonstrates that even if we conclude that appellant's trial counsel's performance was deficient, the trial court's decision would not have been different.

■ Appellant next argues that the trial court erred in denying his ineffective assistance of counsel claim under D.C.Code § 23–110 (2001) without a hearing. We review a trial court's decision not to hold a hearing for an abuse of discretion. *Lane v. United States,* 737 A.2d 541, 548 (D.C.1999) (citing *Sykes v. United States,* 585 A.2d 1335, 1340 (D.C.1991)). Although § 23–110 presumes a hearing, a hearing is not always required when "the

1. Appellant overlooks an important fact—limitations on cross-examination are not *per se* reversible error.

existing record provides an adequate basis for disposing of the motion." *Ready, supra,* 620 A.2d at 234; *see also* D.C.Code § 23–110(c) (2001). "Moreover, the court has recognized that a hearing is unnecessary when the motion consist[s] of (1) vague and conclusory allegations, (2) palpably incredible claims, or (3) allegations that would merit no relief even if true." *Id.; see also Lanton v. United States,* 779 A.2d 895, 901 (D.C.2001). In this case, the record contained affidavits from both Harkins and his attorney stating that prior to the criminal trial, Ms. Wesson had contacted a civil attorney about filing a civil suit against Harkins. The trial court assumed the truth of the affidavits and concluded that the record contained an adequate basis for disposing of the motion without a hearing. We agree with the trial court that a hearing would not have elicited any additional information; thus a hearing was not necessary. *See generally Fields v. United States,* 698 A.2d 485, 489 (D.C. 1997), *cert. denied,* 523 U.S. 1012, 118 S.Ct. 1203, 140 L.Ed.2d 331 (1998) (concluding that when a § 23–110 motion is capable of resolution based on the record, no hearing is required).

### III.

 Appellant also argues that there was insufficient evidence to convict him of misdemeanor sexual abuse. Misdemeanor sexual abuse occurs when an individual "engages in a sexual act or sexual contact with another person and who should have knowledge or reason to know that the act was committed without that other person's permission." D.C.Code § 22–3006 (2001). Thus, there are two essential elements to misdemeanor sexual abuse: "(1) that the defendant committed a 'sexual act' or 'sexual contact' ... and (2) that the defendant knew or should have known that he or she did not have the complainant's permission to engage in the sexual act or sexual contact." *Mungo v. United States,* 772 A.2d

240, 244–45 (D.C.2001). This case deals solely with the issue of "sexual contact." The Code defines sexual contact as "the touching with any clothed or unclothed body part or any object, either directly or though the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." D.C.Code § 22–3001(9) (2001). Thus, to be found guilty of misdemeanor sexual abuse by way of "sexual contact," the government must prove the *specific intent* to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Mungo,* 772 A.2d at 245. Specific intent "is a state of mind particular to the accused and unless such intent is admitted, it must be shown by circumstantial evidence." *Massey v. United States,* 320 A.2d 296, 299 (D.C.1974); *see also Jones v. United States,* 716 A.2d 160, 166 (D.C. 1998); *Shelton v. United States,* 505 A.2d 767, 770 (D.C.1986).

 Appellant argues that there was not sufficient evidence to show specific intent to commit misdemeanor sexual abuse. When reviewing a sufficiency of the evidence claim, we apply the same standard as the trial court. *Curry v. United States,* 520 A.2d 255, 263 (D.C. 1987) (citation omitted). "We view the evidence in the light most favorable to the government, recognizing the province of the trier of fact to weigh the evidence, determine the credibility of the witnesses and to draw reasonable inferences from the testimony." *Dickerson v. United States,* 650 A.2d 680, 683 (D.C.1994). "In reviewing bench trials, this court will not reverse unless an appellant has established that the trial court's factual findings are 'plainly wrong' or 'without evidence to support [them].'" *Mihas v. United States,*

618 A.2d 197, 200 (D.C.1992) (quoting D.C.Code § 17–305(a) (1989)).

 Viewing the evidence in the light most favorable to the government, as we must, it is clear that there was sufficient evidence in the record to support the trial court's conclusion that Harkins had the specific intent to commit misdemeanor sexual abuse. While sitting next to the complainant on the Metro, appellant rubbed his leg against hers and his hand against her thigh. This contact persisted even after the complainant moved closer to the window giving appellant more space. When the complainant got up to change seats, she felt appellant touch her buttock leading the complainant to exclaim, "No, you can't do that." After the complainant sat down in the new seat, appellant moved to the seat next to her. The complainant then changed seats a second time, and appellant again followed her. Finally, as appellant exited the Metro train, Harkins dropped his business card in the complainant's newspaper and said, "Give me a call sometime, baby." These facts, when viewed in their totality, are sufficient evidence to infer that Harkins had the specific intent to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," and thus commit misdemeanor sexual abuse by way of sexual contact when he touched complainant's buttock. *See Langley v. United States,* 515 A.2d 729, 732 (D.C. 1986) (quoting *United States v. Jackson,* 183 U.S.App. D.C. 270, 273, 562 F.2d 789, 792 (1977)) (stating that "[t]he necessary element of intent need not be proved directly 'but may be inferred from the totality of the circumstances presented to the [factfinder]' ").

 Appellant's final arguments can be addressed summarily. Appellant contends that the trial court (1) used a standard less than "proof beyond a reasonable doubt" and (2) did not understand that the proof of specific intent was a required element for misdemeanor sexual abuse. Absent a showing otherwise, "trial judges are presumed to know and apply the proper legal standards." *Wright v. Hodges,* 681 A.2d 1102, 1105 (D.C.1996) (citing *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)). We find no evidence in the record to support appellant's contentions that the trial court did not understand the law or applied incorrect law.

Accordingly, for the foregoing reasons, judgment is

*Affirmed.*