In re John J. HARKINS, Respondent.

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 05–BG–517.**

District of Columbia Court of Appeals.

Argued April 19, 2006.
Decided May 18, 2006.

Traci M. Tait, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before Washington, Chief Judge, Reid, Associate Judge, and Josey–Herring,[1] Associate Judge, Superior Court of the District of Columbia.

WASHINGTON, Chief Judge:

Bar Counsel takes exception to the Report and Recommendation of the Board on Professional Responsibility (the "Board") which concluded that Respondent's criminal conviction for misdemeanor sexual abuse did not constitute a sanctionable ethics violation under Rule 8.4(b) of the District of Columbia Rules of Professional Conduct (the "Rules"). Bar Counsel also contends that a thirty-day suspension is more appropriate than the Board's recommendation of public censure.[2] Respondent did not file a brief in this court. The Board similarly did not seek leave to file a brief in this matter, but instead rests on the analysis and conclusion contained in its Report and Recommendation. We agree with Bar Counsel that crimes of a sexual nature violate an attorney's ethical obligations, and that Respondent's actions warrant thirty days suspension.

## I.

Following a bench trial, Respondent was found guilty of misdemeanor sexual abuse of Ms. Katherine Wesson. Respondent, in November 2002, lost his direct appeal to

1. Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

2. This recommendation was made in the event this court were to find an ethics violation.

this court. *See Harkins v. United States,* 810 A.2d 895 (D.C.2002). The facts of the underlying incident are detailed in our previous opinion:

> On the morning of October 8, 1999, the [victim], Ms. Wesson, boarded a Metro train at the Deanwood Station on the Orange Line traveling to work. Ms. Wesson was sitting in the window seat reading a newspaper when the [respondent], Harkins, boarded the train at the Eastern Market Station and sat in the seat next to her. After sitting down, Harkins and Ms. Wesson had a brief conversation, which included an exchange of names and places of employment.

> According to the government's evidence [at trial], several events took place after Harkins sat down next to Ms. Wesson. While sitting next to Ms. Wesson, Harkins began to move closer to her and started rubbing his leg against hers, and then his hand against her thigh. Following this contact, Ms. Wesson decided to change seats and as she "brushed past" Harkins, she felt him touch her buttock. Ms. Wesson responded, "No, you can't do that" and proceeded to change seats. After Ms. Wesson sat down in her new seat, again a window seat, Harkins moved beside her and attempted to engage Ms. Wesson in conversation. Ms. Wesson responded that she did not want to talk with Harkins and then changed seats a second time, this time sitting in an aisle seat. Harkins then moved to the seat directly across the aisle from Ms. Wesson's new seat .... When the Metro train reached the McPherson Square Metro Station, Harkins got up, dropped his business

card in Ms. Wesson's newspaper, and said, "Give me a call sometime, baby." *Id.* at 897–98.[3]

Respondent John J. Harkins has been a member of the Bar of the District of Columbia since April 16, 1974. At the time of the events at issue, Respondent was Executive Vice President and Chief Executive Officer of the Printing and Graphics Communications Association in Washington, D.C. He formally retired from that position on May 31, 2000, and has been on inactive status with the Bar since April 27, 2000. Prior to the incident at issue, Respondent had never been the subject of any disciplinary action or criminal proceeding.

## II.

Rule XI, § 9(g)(1) of the District of Columbia Court of Appeals Rules Governing the Bar sets forth the standard of review for the Board's findings of fact and recommended sanction. Regarding findings of fact, the "[c]ourt shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." *Id.* Of course, we owe no deference to the Board's conclusions of law. *In re Fair,* 780 A.2d 1106, 1110–11 (D.C.2001). The issue of whether Respondent's actions constitute an ethical violation is a question of law, and thus our review is *de novo.*

Rule 8.4(b) states that it is professional misconduct for an attorney to "[c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." D.C. R. Prof'l Conduct 8.4(b).

---

**3.** Respondent has consistently claimed a different sequence of events on the day in question. The trial court, however, made findings of fact and found Respondent guilty beyond reasonable doubt. We affirmed that conviction and adopted the trial court's factual findings in our November 2002 opinion. We were neither invited to, nor would we consider, revisiting facts that have been previously and conclusively established in proceedings before our court.

Through its own terms, it is clear that not every criminal act warrants professional sanctions. Rather, the rule is designed to professionally sanction only those criminal acts that implicate and call into question the fundamental characteristics we wish attorneys to possess.

■ Although there is sparse case law in this jurisdiction dealing with Rule 8.4(b), we have, on occasion, applied that Rule to situations involving sexual misconduct. Specifically, we have held that sexual relations with minors, *In re Childress*, 811 A.2d 805 (D.C.2002); *In re Bewig*, 791 A.2d 908 (D.C.2002) (per curiam), as well as sexual assaults on clients, *In re Key*, Bar Docket No. 169–04 (BPR Nov. 12, 2004), *aff'd*, 863 A.2d 837 (D.C.2004) (per curiam), are violations of Rule 8.4(b). While those cases provide guidance on the confluence of improper sexual conduct and Rule 8.4(b), they are distinguishable from the case *sub judice*. Sexual misconduct with minors and children directly implicates an attorney's trustworthiness because such actions imply a willingness to take advantage of those in a subordinate and vulnerable position. Such is not the situation in the instant case. Respondent was not taking advantage of, or manipulating a dominant position over another. Because our previous applications of Rule 8.4(b) are inapposite to the present situation, we look beyond case law to help define the extent or the Rules reach.

The confines and scope of Rule 8.4(b) can be clarified by looking to its accompanying comments. Comment 1, in its entirety, states that:

> Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offenses carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpi-

tude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

D.C. R. Prof'l Conduct 8.4 cmt. 1. Of particular import, is the portion of Comment 1 that states that "[o]ffenses involving *violence*, dishonesty, breach of trust, or serious interference with the administration of justice" qualify as sanctionable crimes. *Id.* (emphasis added).

■ Respondent was convicted of misdemeanor sexual abuse, the elements of which are: (1) the defendant committed a sexual touching on another person; (2) when the defendant committed the touching, s/he acted voluntarily, on purpose and not by mistake or accident; (3) the other person did not consent to being touched by the defendant in that matter; and (4) defendant possessed an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. *Mungo v. United States*, 772 A.2d 240, 245 (D.C.2001). In the District of Columbia, " 'the sexual nature [of the conduct] supplies the element of violence or threat of violence' " required to considered misdemeanor sexual abuse a crime of violence. *Id.* at 246; (quoting *In re A.B.*, 556 A.2d 645, 646 (D.C.1989)) (stating that non-violent sexual touching, a lesser included of-

fense of misdemeanor sexual abuse, is considered an assault under D.C.Code § 22–504 because the sexual nature of the touching supplied the element of violence or threat of violence).

Although the Board is correct in stating that not all criminal activity warrants professional discipline, Respondent's actions of sexual abuse rise to an ethical violation that warrants sanction. Respondent touched Ms. Wesson multiple times in a sexually inappropriate manner: rubbing against her leg, touching her thigh, and finally touching her buttocks. In what is at best characterized as harassment, and at worst stalking, Respondent then proceeded to follow Ms. Wesson throughout the Metro compartment as she sought to evade his unwanted advances. Respondent culminated his series of harassing actions by tossing his business card at Ms. Wesson and glibly saying, "Give me a call sometime, baby."

 It is possible of course that any one of Respondent's actions taken alone would not reflect adversely on his honesty, trustworthiness, or fitness as a lawyer, and would thus not warrant professional discipline. We, however, need not reach that issue here because the aggregate of Respondent's multiple sexually abusive contacts and stalker-like harassments rise to the level of professional misconduct that Rule 8.4(b) was designed to address. Despite not directly implicating honesty or trustworthiness, sexually abusive contact, because of its inherently violent nature, calls into question one's fitness as a lawyer and thus falls within the ambit of Rule 8.4(b). *See In re Kearns,* 991 P.2d 824 (Colo.1999) (sanctioning attorney for a vehicular assault that caused the victim life-threatening injuries); *In re Sutton,* 265 Kan. 251, 959 P.2d 904 (1998) (sanctioning attorney who drove past construction worker at high speed, hit a sign she was holding, and then threw a bottle at her);

*Florida Bar v. Schreiber,* 631 So.2d 1081 (Fla.1994) (stating that attorney's domestic violence warranted temporary suspension because it affected the perception of lawyers in a negative way). Contrary to the Board's conclusions, Respondent's violent, sexual conduct violates our Rules of Professional Conduct.

### III.

Finding a violation of professional ethics, we now turn to the question of sanctions. The Board suggests that if Respondent is found to have violated a canon of professional conduct, public censure is the appropriate discipline. Bar Counsel takes exception to this proposal and, along with the Hearing Committee, recommends a thirty-day suspension.

 With respect to discipline, we defer to the Board's recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g)(1). We review a Board's exercise of its broad discretion in handing out discipline for abuse. *See In re Arneja,* 790 A.2d 552, 558 (D.C.2002). "Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re Hallmark,* 831 A.2d 366, 371 (D.C.2003) (citations and quoting marks omitted) (also stating that "[t]he Board's recommended sanction comes to the court with a strong presumption in favor of its imposition").

 "[A]lthough we must give considerable deference to the Board's recommendations in these matters, the responsibility for imposing sanctions rests with this court in the first instance." *In re Temple,* 629 A.2d 1203, 1207 (D.C.1993). "In deciding whether to adopt the disposition of the Board, this court examines the 'nature of

the violation, aggravating and mitigating circumstances, the absence or presence of prior disciplinary sanctions, the moral fitness of the attorney, and the need to protect the legal profession, the courts, and the public.'" *In re McLain,* 671 A.2d 951, 954 (D.C.1996) (quoting *In re Lenoir,* 604 A.2d 14, 15 (D.C.1992)). "In all cases, the purpose of imposing a sanction is not to punish the attorney, but to protect the public and the courts, safeguard the integrity of the profession, and deter respondent and other attorneys from engaging in similar misconduct." *In re Cater,* 887 A.2d 1, 17 (D.C.2005) (citing *In re Pierson,* 690 A.2d 941, 948 (D.C.1997)).

■ Public censure is one of the more lenient sanctions that may be imposed on an attorney for professional misconduct. *See* D.C. Bar R. XI. As a lesser penalty, public censure is more appropriate in cases involving only minor misconduct where the attorney has had no prior discipline and there is no indication of substantial or intentional violations. *See In re Mance,* 869 A.2d 339, 341 (D.C.2005) (stating, in an attorney discipline case based on the attorney's neglect, "that harsher sanctions (*i.e.,* longer periods of suspension or disbarment) tended to be reserved for misconduct involving neglect of more than one client and/or dishonesty or other especially aggravating features, while the lesser penalty of public censure was only appropriate in cases involving failure to make filings in court and to comply with court orders when the respondents had no prior discipline and 'there are not other substantial or intentional violations in the course of the misconduct'" (internal citations and quotation marks omitted)). The discipline for violation of Rule 8.4(b) has never been as lenient as public censure. *See In re Key,* Bar Docket No. 169–04 (BPR Nov. 12, 2004), *aff'd,* 863 A.2d 837 (D.C.2004). Rather, the sanctions for violating of Rule 8.4(b) have traditionally ranged from a thirty-day suspension to disbarment. *See*

*id.; see also, e.g., In re Soininen,* 783 A.2d 619 (D.C.2001) (thirty day suspension); *In re Slattery,* 767 A.2d 203 (D.C.2001) (disbarment); *In re Spiridon,* 755 A.2d 463 (D.C.2000) (one year suspension with fitness requirement); *In re Phillips,* 705 A.2d 690 (D.C.1998) (sixty days suspension); *In re Cerroni,* 683 A.2d 150 (D.C. 1996) (per curiam) (one year suspension); *In re Perrin,* 663 A.2d 517 (D.C.1995) (three year suspension); *In re Hutchinson,* 534 A.2d 919 (D.C.1987) (en banc) (one year suspension); *In re Kent,* 467 A.2d 982 (D.C.1983) (thirty day suspension).

The specific facts and nuances of this situation are unique, and thus, this court has not had an opportunity to consider what would constitute an appropriate sanction for this type of unethical conduct. We do note, however, the fact that violations of Rule 8.4(b), whether of a sexual nature or not, have always warranted discipline in excess of public censure. The Board's recommendation, therefore, falls outside of the traditional range of discipline for this violation.

■ Furthermore, we find the Board's recommendation of public censure to be too lenient for a violation of Rule 8.4(b). Despite Respondent's lack of prior disciplinary history, the nature of his conduct, coupled with his questionable moral fitness, justify sanctions more serious than public censure. The integrity of the legal professional would be called into question were we to merely censure a member of this bar who repeatedly, sexually touched, on the Metro, a woman whom he did not know, and subsequently followed her around the Metro car. We do, however, take into account certain mitigating factors: Respondent has never had any disciplinary actions taken against him, Respondent is on inactive status and appears to no longer practice law, and the Board

made findings that it believed this behavior was aberrant and not likely to repeat itself. With these mitigating factors in mind, we hold that suspension for thirty days is the appropriate sanction for Respondent's conduct.

For the foregoing reasons, we decline to adopt the recommendation of the Board on Professional Responsibility and suspend Respondent for a period of thirty days.

*So ordered.*